Municipio de Guayanilla, demandante y apelante, *v.* Comisión de Servicio Público de Puerto Rico, demandada y apelada; Jesús Stella Rodríguez, interventor y apelado.

Núm. 7509.—*Sometido:* Marzo 15, 1938. *Resuelto:* Mayo 31, 1938.

*Pedro M. Porrata* e *Ismael Soldevila,* abogados del apelante; *Leopoldo Tormes García,* abogado del interventor apelado; *Hon. Procurador General B. Fernández García* y *T. Torres Pérez,* abogados de la demandada y apelada.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

Don Jesús Stella Rodríguez, dueño de más de 500 cuerdas de terreno que dedica al cultivo de caña de azúcar en la municipalidad de Guayanilla, se querelló ante la Comisión de Servicio Público de que la American Railroad Co. of Porto Rico se había negado a instalarle un desvío en los kilómetros 256 y 257 de la línea general de dicho ferrocarril, por impedírselo la regla de la Comisión de Servicio Público que prohibe la construcción de desvíos a una distancia menor de dos kilómetros de otro existente, hallándose el denominado ''Peñoncillo'' a menos de dos kilómetros del sitio interesado por el querellante. Alegó en la querella que la actitud de la querellada era injustificada, caprichosa y perjudicial a él; que el desvío sería público, para beneficio de otros que también quisieran utilizarlo; y terminó suplicando que se ordenara la instalación del desvío en la forma y sitio solicitados, con más cualquier otro pronunciamiento en consonancia con la ley y los hechos.

El 18 de septiembre de 1933 la Comisión celebró una audiencia, a la que comparecieron el querellante Sr. Stella Rodríguez, representado por su abogado, y la American Railroad Co. of Porto Rico por el suyo. Ambas partes presentaron su prueba, resultando, a nuestro juicio, probado que el sitio

seleccionado por el querellante para conectar el desvío es el más conveniente por ser el sitio donde la carretera se acerca más a la vía y por haber en derredor una cantidad considerable de caña que se hace necesario hoy transportar a la estación de Guayanilla como punto más cercano, para de allí ser cargada y distribuída; que el trayecto hasta la estación de Guayanilla resulta muy inconveniente debido al tráfico en la carretera, pérdida de caña y probabilidad de daños a menores que montan en las carretas y *trucks* para sustraer pedazos de caña; que el desvío de Peñoncillo es inadecuado porque no hay caminos con acceso a él; que el terreno donde se proyecta conectar el desvío pertenece a la American Railroad Co. of Porto Rico; que en ese lugar podrían cargarse de 10 a 12,000 toneladas de caña, y que el tránsito de carros de caña durante la zafra le ocasiona mucho daño a las carreteras.

En vista de que la oposición de la querellada se basaba únicamente en la regla de la Comisión ya mencionada, ésta acordó, una vez terminada la vista, acceder a la solicitud del querellante, y haciendo una excepción a su regla, ordenó la concesión del desvío en el sitio solicitado.

Así las cosas, en 2 de octubre de 1933 compareció ante la Comisión el Municipio de Guayanilla solicitando mediante moción que se le permitiera intervenir en los procedimientos, a cuyo fin alegó que no tuvo conocimiento de la querella hasta el 28 de septiembre de 1933; que la orden solicitada afectaba derechos del municipio; que de la querella no aparece la persona o personas propietarias del terreno donde se pretendía construir el desvío, y que con éste se invadiría propiedad del municipio y se obstruiría el uso del camino municipal.

Con motivo de dicha moción, la Comisión tomó el acuerdo unánime de dejar el asunto pendiente hasta tanto la Compañía del Ferrocarril sometiera un plano del sitio donde iba a situarse el desvío, y si aparecía de él que los derechos del Municipio se afectarían, entonces concedería la intervención solicitada. Para resolver la moción de intervención con vista del plano, celebró la Comisión una nueva vista el 22 de noviem-

bre de 1933, a la que comparecieron el querellante, la querellada y el interventor, todos representados por abogados. El resultado fué permitirle al municipio que interviniera y señalar el 27 de noviembre de 1933 para oír su prueba. Celebrada esta tercera comparecencia, la Comisión dictó, con fecha 21 de diciembre de 1933, la siguiente resolución:

"Visto y considerado detenidamente un informe del Comisionado de Servicio Público, de fecha 19 de diciembre de 1933, la Comisión a moción del Sr. Delgado acordó hacer suyo el mismo en todas sus partes, dejando así resuelta definitivamente la querella presentada por Jesús Stella Rodríguez contra la American Railroad Co. of P. R., sobre negativa a conectar un desvío entre los kilómetros 256 y 257 de la línea general de dicho ferrocarril."

El informe a que se refiere la Comisión en la anterior resolución dice así textualmente:

"19 de diciembre de 1933.—En el asunto de la querella de Jesús Stella Rodríguez contra la American Railroad Co. of Porto Rico sobre negativa a conceder un desvío entre los Kms. 256/257 de la línea general de dicho ferrocarril. Caso No. C–173.

"En este caso compareció Jesús Stella Rodríguez para solicitar la instalación de un desvío cerca de sus propiedades con el fin de poder embarcar por ferrocarril una cantidad de caña. Compareció la American Railroad Company manifestando que la única razón que tenía para oponerse a la construcción del desvío en el sitio indicado, era que dicho desvío quedaría situado a 1½ kilómetros aproximadamente de otro desvío ya establecido, y que esto violaba una regla de la Comisión de Servicio Público y por tal motivo sometían el caso a la Comisión.

"Se celebró vista pública con la comparecencia de la American Railroad Company, y de la declaración del ingeniero del ferrocarril, Sr. Etienne Totti, la Comisión llegó a la conclusión de que el desvío Peñoncillo, cerca del cual se encontraría el que aquí se solicita, hace próximamente año y medio o dos años que está inservible, es decir, que está sin uso; y que además mediante mejoras que se han hecho en la construcción de las agujas, que son de una sola pieza, prácticamente ha desaparecido el peligro que representaba la cercanía de los desvíos.

"La Comisión después de oír la prueba tomó el siguiente acuerdo por unanimidad: 'ORDENAR, sin que se entienda que ello establece

precedente alguno, que se proceda a la instalación del aludido desvío en armonía con las recomendaciones que desde el punto de vista técnico formule el ingeniero de la American Railroad Company, ordenándose además a las partes que formalicen el contrato de rigor para estos casos.'

''Desde luego que se justificó que el peticionario es propietario de una cantidad considerable de terreno y que cosecha un volumen de cañas de unas 7 a 10,000 toneladas.

''Esta resolución fué dictada el 18 de septiembre de 1933 y con fecha 31 del mismo mes se envió aquí un telegrama por el Alcalde de Guayanilla, solicitando 30 días para preparar un plano demostrativo de qué derechos de ese municipio iban a ser afectados. La Comisión dió un plazo a las partes para que presentaran el plano de referencia y señaló de nuevo el asunto para vista pública, dándole oportunidad al Municipio para que compareciera. Celebró nueva vista la Comisión y oyó al municipio, que compareció por medio de su abogado.

La contención del Municipio de Guayanilla primeramente era la de que el desvío solicitado iba a ocupar parte de un camino municipal. De la prueba presentada ante la Comisión y de los planos aquí sometidos, aparece por el contrario que el ferrocarril tiene una faja de terreno de su propiedad colindante con un camino municipal y que para nada se utilizaría dicho camino en relación con la construcción del desvío. El desvío quedaría instalado totalmente en terrenos del ferrocarril; y de las declaraciones del propio ingeniero del ferrocarril, señor Totti, se desprende que la faja de terreno disponible para este fin es más que suficiente para que se pueda establecer la construcción con amplitud.

''La otra contención del municipio consistía en alegar que si se construía en el sitio indicado ese desvío, traficarían más carros por el camino de referencia y que esto perjudicaría el tráfico. Todo ciudadano tiene derecho a usar caminos municipales y carreteras insulares, y mientras no se pruebe lo contrario, no habremos de presumir que la construcción de un solo desvío habrá de ocasionar tal congestión de tráfico, que esto perjudique al público en general. Después de todo, la zafra dura alrededor de cinco o seis meses. De las declaraciones que se prestaron ante nosotros, el camino en cuestión es muy poco concurrido y apenas tiene tráfico alguno.

''Por las razones expuestas, y teniendo en cuenta la teoría establecida ya en otros casos, entendemos que es nuestro deber dar facilidades al Sr. Stella Rodríguez para que pueda utilizar el ferroca-

rril para su libre embarque de cañas, y que se debe proceder a conceder el permiso solicitado para construir el dicho desvío mediante el contrato correspondiente. Debe declararse, por lo tanto, sin lugar la oposición. (Fdo.) Miguel A. Muñoz, Comisionado de Servicio Público de Puerto Rico.''

No conforme el municipio, apeló en 15 de enero de 1934 para ante la Corte de Distrito de San Juan, imputándole a la Comisión de Servicio Público doce errores que la corte al resolverlos redujo a los siguientes siete, debido a que innecesariamente se repetían algunos, usando distinta fraseología:

''1. Que la petición no aduce hechos que justifiquen el remedio solicitado.

''2. Que la orden es nula porque no ordena en la forma y manera que requiere la Ley.

''3. Que la orden es nula porque no contiene un *finding of facts* específico.

''4. Que la Comisión de Servicio Público cometió error al dirimir cuestiones de propiedad para la resolución de las cuales carece de jurisdicción.

''5. Que la orden dictada por la Comisión no está justificada por el *finding*.

''6. Que la Comisión de Servicio Público cometió error al ordenar la conexión de un desvío en un sitio peligroso para las personas que usan las carreteras y caminos públicos y vecinales al desvío que se ordena construir.

''7. Que la Comisión de Servicio Público cometió error al ordenar una conexión de desvío en violación de la regla de los 2 Kms. establecida por la Comisión misma.''

El mismo día y ante la misma corte radicó una moción solicitando que se dictara una orden interlocutoria suspendiendo los efectos de la orden apelada hasta que se resolviera la apelación pendiente, para lo cual se ofreció ''a prestar todas las garantías que esta Corte estime necesarias de acuerdo con la ley aplicable al presente caso.'' En 15 de enero de 1934 la corte citó a la Comisión de Servicio Público y a la American Railroad Company of Porto Rico para que comparecie-

ran el día 25 de enero de 1934 a mostrar causa por la cual no debía concederse la orden de *supersedeas* solicitada, y hasta entonces y previa la prestación de una fianza de $2,000, prohibió a la American Railroad Co. of Porto Rico que ejecutara la orden de la Comisión. El 20 de enero de 1934 la corte ordenó la citación de las partes por telégrafo y a moción de la Comisión hizo al Sr. Stella Rodríguez parte en el procedimiento el 15 de febrero de 1934. El 9 de marzo de ese mismo año decretó la suspensión de la orden de la Comisión previa la prestación de una fianza para beneficio de la parte que resultare agraviada, hasta la suma de $2,000.

Algún tiempo después, a saber, en 9 de abril de 1935, solicitó el Sr. Stella Rodríguez que el municipio de Guayanilla prestara una fianza adicional o que la ya presentada fuera aumentada a por lo menos $5,000, pues debido al tiempo transcurrido la de $2,000 era insuficiente a la sazón. Aunque ello no consta de autos, parece que la corte señaló el 15 de abril de 1935 para oír a las partes en relación con la moción sobre ampliación de fianza, pues el 13 de abril, el municipio apelante solicitó que la vista se transfiriese para cualquier día después del 22 de abril. A pesar de esa moción de prórroga, la corte oyó al peticionario el día previamente señalado, y el 29 de mayo aumentó a $5,000 la fianza original. El 24 de agosto de 1935 archivó en la Corte de Distrito su contestación don Jesús Stella Rodríguez, y el día 27 de ese mismo mes la Comisión de Servicio Público la suya. Por decreto del 16 de febrero de 1937 la corte de distrito desestimó la apelación interpuesta por el interventor apelante, Municipio de Guayanilla, y confirmó en todas sus partes la orden de la Comisión del 21 de diciembre de 1933, imponiendo al municipio las costas y $300 para honorarios de abogado. De ese decreto apeló el municipio para ante este Tribunal Supremo. Señala en su alegato siete errores. Por estar íntimamente relacionados el primero con el segundo, los discutiremos conjuntamente.

Dicen así:

 ''1. La Corte de Distrito cometió error al exigirle una fianza de $2,000 al Municipio de Guayanilla en su orden interlocutoria (*supersedeas*) de marzo 9 de 1934.

''2. La Corte de Distrito cometió error al acceder a la moción de ampliación de fianza en su resolución de mayo 29 de 1935.''

Ni el apelante puede levantar ni esta corte debe resolver las cuestiones que plantea el municipio en dichos dos errores. Por eso nos limitaremos a esbozarlas solamente.

Se basa el apelante en el artículo 80 de la Ley de Servicio Público de Puerto Rico (núm. 70 de 1917, vol. 2, pág. 529) y en el 356 del Código de Enjuiciamiento Civil (ed. 1933). El primero de ellos lee así:

''Artículo 80.—*Orden de suspensión* (supersedeas) *en apelación.*— Ninguna apelación de ninguna orden de la Comisión (excepto según lo que más adelante se dispone), en ningún caso surtirá el efecto de una suspensión (*supersedeas*) de la orden apelada, a menos que la predicha corte correspondiente, en virtud de una orden interlocutoria, diere efecto suspensivo a dicha apelación. Esta orden interlocutoria se dictará después del aviso a la Comisión y demás partes en autos, y de una vista sobre la petición para que se dicte la orden interlocutoria de suspensión de sentencia (*supersedeas*). *Al concederse una orden de suspensión de sentencia (supersedeas) a petición de una compañía de servicio público* en cualquier caso (excepto lo que más adelante se dispone en la presente), *la corte podrá, a su juicio, requerir la prestación de una fianza a favor de El Pueblo de Puerto Rico, para beneficio de todas las partes agraviadas,* por la suma y en las condiciones que la corte dispusiere en su orden, *o puede conceder dicha suspensión (supersedeas) en los términos y condiciones, que la corte, a su juicio prescribiere; Disponiéndose, sin embargo,* que en todo caso de apelación por una compañía de servicio público contra una orden de la Comisión estableciendo, cambiando, alterando, o en cualquier modo afectando los precios, tipos, tipos mancomunados, o cargos por cualquier servicio, la apelación surtirá el efecto de una suspensión de sentencia (*supersedeas*) al prestarse una fianza a favor de El Pueblo de Puerto Rico, en dicha corte, por dicha compañía de servicio público, para beneficio de todas las partes perjudicadas por la falta de cumplimiento de la orden apelada, durante el período de dicha suspensión de sentencia (*supersedeas*). Dicha fianza será

por la cantidad que la corte fijare y con fiadores que deberán ser aprobados por la corte, y bajo condición de reembolsar a todas dichas partes agraviadas cualquier exceso sobre el tipo o cargo fijado por la Comisión y que dicha compañía de servicio público hubiere recibido después de dictada la orden por la Comisión, si dicha orden fuese finalmente confirmada; y podrá también contener las demás condiciones que la corte dispusiere y ordenare.'' (Bastardillas nuestras.)

Y alega que a virtud de dicho artículo, la corte de distrito tiene facultades para exigir fianzas cuando la suspensión de la orden se concede a petición de una compañía de servicio público, pero no las tiene cuando se trata de cualquiera otra entidad o persona a quien la ley no declara compañía de servicio público.

El segundo artículo invocado, el 356 del Código de Enjuiciamiento Civil (ed. 1933), dice:

''Art. 356.—En cualquiera pleito o procedimiento en que la Isla o El Pueblo de Puerto Rico fuere demandante, o cualquier funcionario insular, en su carácter oficial, o en representación de la Isla, *o cualquiera ciudad o distrito fuere parte como demandante o demandado,* no podrá exigirse bono, fianza o garantía de dicha Isla, ni del pueblo de la misma, ni de ningún funcionario ni de ninguna ciudad, pero no obstante, en todo lo relativo al cumplimiento de las demás disposiciones de este Código, *dicha Isla o el pueblo de la misma, o cualquier funcionario insular actuando en su carácter oficial o cualquiera ciudad o distrito tendrán los mismos derechos, recursos y beneficios como si se hubieren prestado y se hubiere aprobado el bono, fianza o garantía que por este Código se requiere.''* (Bastardillas nuestras.)

De este artículo dice que fortalece su interpretación del anterior.

■ Consideremos las razones que nos impiden dictaminar sobre las cuestiones sometidas a nuestra consideración. En la petición de *supersedeas* que bajo juramento hizo el apelante a la corte inferior para que suspendiera los efectos de la orden de la Comisión hasta tanto resolviera definitivamente el caso (supra) dijo, como incentivo a la corte y a la otra

parte para que se le concediera lo que solicitaba, que estaba dispuesto a prestar todas las garantías que le fueran exigi-das. No dijo entonces, como sostiene ahora, que tenía dere-cho a la suspensión de la orden sin la prestación previa de una fianza; no alegó que los artículos 80 de la Ley de Servi-cio Público de Puerto Rico y 356 del Código de Enjuicia-miento Civil se oponían al requerimiento de la fianza. ¿Por qué no se abstuvo de ofrecer garantías si las creía ilegales? Fué el municipio quien invitó a la corte sentenciadora a hacer lo que ahora censura, o sea que le fijara una fianza o le exi-giera otras garantías como condición previa a la concesión de la orden interlocutoria de *supersedeas*. Por eso creemos que aun cuando la corte se haya equivocado al exigir al muni-cipio apelante la prestación de fianza, habiendo el propio municipio inducido a la corte a cometer ese error; no puede ahora valerse de él para atacar la sentencia recurrida.

"*Error Inducido.*—Es regla bien sentada la de que una parte no puede señalar con éxito como error una decisión que ella misma in-dujo a la corte sentenciadora a dictar; si esa parte pide o consiente que la corte sentenciadora proceda en una forma determinada, no se le permitirá que se queje de tal acción. . ." 2 R.C.L. 238, sec. 198, y casos citados.

Más aún. El apelado Stella Rodríguez alega en su alegato y ello aparece de los autos, que el apelante prestó sin protesta alguna la fianza de $2,000 que le fué exigida, y posteriormente la de $3,000 adicionales. A la vista de la moción sobre ampliación de fianza, celebrada en la corte de distrito el día 15 de abril de 1935, donde el apelante pudo resistir la solicitud de mayores garantías y quizás si hasta anular la orden interlocutoria de 9 de marzo de 1934, ni siquiera compareció. No obstante, prestó la fianza adicional de $3,000 que le fué impuesta por resolución del día 29 de mayo de 1935. A nuestro juicio las actuaciones del munici-pio apelante implican un reconocimiento de la validez de ambas órdenes interlocutorias y una renuncia de su derecho a objetarlas, especialmente en apelación.

". . . Una adecuada expresión de lo que equivale a una renuncia sería la de que cualquier acto de una parte por el que implícitamente reconoce la validez de una sentencia contra él, significa una renuncia de su derecho a apelar de la misma o a suscitar errores para revocarla. . . ." 2 R.C.L. 58, sec. 38.

Podríamos ir aún más lejos y aplicar a este caso la regla no ciertamente de *estoppel* pero que participa de sus elementos y está sin duda alguna inspirada en el mismo principio, al efecto de que a una parte no le está permitido asumir en un procedimiento judicial, posiciones inconsistentes. Véase 10 R.C.L. 698, sec. 26. De modo que es dable resolver también que el apelante no sólo renunció sus derechos, si es que los tuvo, sino que está impedido (*estopped*) de ejercitarlos ahora, aun asumiendo que los haya tenido. En su moción del día 15 de enero de 1934 solicitando orden interlocutoria de *supersedeas* ofreció dar todas las garantías que la corte estimare necesarias. Ante este tribunal sostiene ahora que el juez inferior no tenía facultad para exigirle la prestación de una fianza, o sea una posición completamente inconsistente con la que asumió antes.

"Por regla general una persona está impedida de adoptar una posición que resulte inconsistente con otra previamente asumida en el curso del mismo pleito o procedimiento. . . Una corte no puede adquirir jurisdicción del asunto en controversia mediante impedimento (*estoppel*), mas aquel que ha invocado el ejercicio de su jurisdicción en un asunto en que la corte tiene facultad para asumirla, no puede más tarde oponerse a ella. . ." 10 R.C.L. 699 et seq., sec. 27.

Véanse: *Cortijo* v. *Rosario,* 33 D.P.R. 431; *P. R. Benevolent Society* v. *Municipio et al.,* 28 D.P.R. 824; *Figueroa* v. *Figueroa et al.,* 23 D.P.R. 438.

Existe otra circunstancia, a saber, que la corte inferior no tuvo oportunidad de pasar por sobre las cuestiones que el apelante somete ahora a nuestra consideración. La regla que ha establecido y generalmente seguido esta Corte Suprema es la de no considerar en grado de apelación aque-

llos puntos que no tuvo ante sí el juez de la corte *a quo*. Véanse: *Municipio de Isabela* v. *Corte de Distrito,* 36 D.P.R. 529; *Laviena* v. *Ramos,* 35 D.P.R. 239; *Castro* v. *Quiñones,* 34 D.P.R. 816; *García et al.* v. *Rodríguez,* 27 D.P.R. 305; *González* v. *Cabrero,* 22 D.P.R. 341. Véase además 2 R.C.L. 69, sec. 52, y casos citados.

Por las razones expuestas, y considerando además que aun cuando la corte inferior hubiere incurrido en los dos errores que ahora discutimos, no se ha demostrado que el apelante haya sufrido con ellos perjuicios, los dos errores señalados deben ser desestimados.

El apelante discute también la validez de la orden de 9 de marzo de 1934 desde el punto de vista de un contrato mediante el cual el fiador o los fiadores quedaron obligados a responder hasta la suma de $2,000 de los daños que con la suspensión de la orden de la Comisión ocasionaren al apelado Stella Rodríguez, y que por tanto su responsabilidad no pudo ser aumentada en $3,000 con la orden de la corte de distrito de 29 de mayo de 1935. El argumento carece de méritos para que se le dé extensa discusión. Esta última orden de la corte dice en lo pertinente así:

"La Corte quedó completamente satisfecha de la insuficiencia de la fianza originalmente prestada y en su virtud ordena que en armonía con la 'orden interlocutoria' de 9 de marzo de 1934 de que antes se ha hecho referencia, amplíe la fianza entonces exigida, de $2,000 hasta la cantidad de $5,000, debiendo en tal virtud proceder a prestar una fianza adicional por la cantidad de $3,000 con efecto retroactivo al 9 de marzo de 1934, bajo las mismas condiciones en que se extendió la ya prestada de $2,000, y para lo cual se concede al Municipio de Guayanilla un término de 5 días a partir de la notificación de esta orden, apercibido de que de no cumplir lo exigido en esta resolución se suspenderá o dejará sin efecto la aludida 'orden interlocutoria' de 9 de marzo de 1934 sin perjuicio de los derechos que puedan asistir al peticionario en este caso."

La corte inferior no aumentó la responsabilidad del fiador o de los fiadores originales. Sí ordenó la prestación de una fianza adicional de $3,000 que pudieron o no suscribir a volun-

tad, el o los primeros fiadores. Si lo hicieron, asumieron porque quisieron un nuevo compromiso que de ningún modo equivale a hacer más oneroso el primero. Si fué otra, o fueron otras personas distintas las que suscribieron la segunda fianza, con menos razón puede sostenerse que se hizo más gravosa la carga de los fiadores originales.

Estima el apelante que la corte inferior hizo uso indebido de su discreción al acceder en 29 de mayo de 1935 a la solicitud de ampliación de fianza, porque en esa fecha no habían radicado· aún sus respectivas contestaciones, ni la Comisión de Servicio Público ni el apelado Stella Rodríguez. No creemos que de ese solo hecho se desprenda abuso alguno en el ejercicio de la discreción judicial.

El tercer error que se señala dice:

"III. La Corte de Distrito cometió error al proceder a la vista de la moción de ampliación de fianza con notificación al municipio de menos tiempo que el estatuído en el artículo 317 del Código de Enjuiciamiento Civil."

El apelante descansa en el artículo 317 del Código de Enjuiciamiento Civil, que dice así:

"Artículo 317.—Toda notificación de una moción deberá hacerse por escrito a no disponerse en este Código que se verifique de otro modo y se practicará con cinco días de anticipación al señalado para la vista si ésta tuviere lugar en el distrito en que se siga el pleito y con diez días en los demás casos. Cuando la notificación se haga por correo, se ampliarán los términos anteriores, según los casos, a razón de un día más por cada veinte y cinco millas de distancia entre el lugar del juicio y aquel en que deba hacerse la notificación, sin que la ampliación del término pueda exceder de treinta días; pero la corte o juez podrá señalar un término más breve. Al hacerse la notificación de una moción o de la orden que en virtud de ella se dicte para que se dé la razón de algún acto, se acompañarán copias de la moción y de la orden y de los documentos con aquélla presentados, exceptuándose las actas de la corte y los legajos del pleito, pero no habrá necesidad de notificar por escrito ninguna moción que afecte a las alegaciones o a la sentencia, ni la que se haga durante el curso· del pleito."

No aparece de autos la moción en que se solicitara señalamiento ni la notificación del secretario de la corte a las partes señalando la fecha de la vista. Tampoco se ha elevado o hecho formar parte del récord un certificado de dicho funcionario acreditativo de tales extremos. Para acreditar la fecha en que se radicó la moción solicitando ampliación de fianza y la del día señalado para la vista, recurre el apelante a la resolución de la corte inferior del 29 de mayo de 1935, resolviendo dicha moción. Repetidas veces ha resuelto este tribunal que los hechos consignados en las opiniones o resoluciones de los jueces no pueden servir para comprobar ante este Tribunal Supremo hechos ocurridos durante la tramitación de un pleito en la corte inferior. *Polanco* v. *Goffinet y Portela,* 33 D.P.R. 331; *Torres* v. *Vidal,* 28 D.P.R. 421; *Guerra et al.* v. *Acha et al.,* 27 D.P.R. 688; *Sucn. Orrach* v. *Sucn. Polanco,* 17 D.P.R. 724; *Albite* v. *Lecumberri,* 22 D.P.R. 856.

Esto sería suficiente para disponer sin ulterior consideración del tercer señalamiento. Pero es que aunque el apelante nos hubiera colocado en condiciones de poder pasar sobre la cuestión, siempre habría que resolverla en su contra, pues el estatuto claramente le reserva a la corte o al juez facultad para señalar un término más breve. Y si bien es cierto que sólo en casos verdaderamente excepcionales cabe hacer señalamientos más cortos, *García* v. *Mazarredo,* 34 D.P.R. 317, 321, el apelante no ha demostrado, aunque lo intenta, que la corte hiciera uso indebido de su discreción, teniendo en cuenta la naturaleza de este procedimiento y el carácter especial y sumarísimo de la orden solicitada (*Morfi* v. *Fajardo Development Co.,* 17 D.P.R. 797, 803). Tampoco ha demostrado que se le causaron perjuicios, *Ríos* v. *Rosaly,* 27 D.P.R. 537, 541; *Caraballo* v. *Rossy, Juez de Distrito,* 27 D.P.R. 935, 939. Debe desestimarse el señalamiento.

 El cuarto señalamiento lee así:

"IV.—La Corte de Distrito cometió error al admitirle al señor Stella la radicación de su contestación un año y siete meses después

de radicado el escrito de apelación y sin que él hubiera intervenido en el procedimiento ante el tribunal.''

Es verdad que la contestación del interventor Stella Rodríguez no se radicó sino hasta después de transcurrido un año y medio de habérsele hecho parte en el procedimiento, pero como de acuerdo con el artículo 87 de la Ley de Servicio Público ''en toda acción y procedimiento, las diligencias de emplazamiento y la práctica y reglas de evidencia serán las mismas que en acciones civiles, excepto lo que de otro modo se disponga...,'' y en las acciones civiles el término para contestar no es jurisdiccional sino que la corte puede prorrogarlo a virtud del artículo 140 del Código de Enjuiciamiento Civil, no habiéndose demostrado, ni intentado siquiera, que al hacerlo abusara de su discreción, debe resolverse que no cometió el error que se le imputa.

El quinto señalamiento dice:

''V.—La Corte de Distrito asimismo cometió error al no declarar fatal el término de 30 días que concede el artículo 82 de la Ley de Servicio Público a la Comisión para archivar su contestación y al permitirle que lo hiciera un año y siete meses después de radicado el escrito de apelación.''

Vistos el artículo 87 de la Ley de Servicio Público de Puerto Rico, supra, el 140 del Código de Enjuiciamiento Civil, y lo dicho al considerar el cuarto señalamiento, se hace innecesario considerar más extensamente este señalamiento. Debe desestimarse.

El sexto dice así:

''La Corte de Distrito cometió error al no declarar con lugar la apelación y al no revocar la orden apelada por todos o cualquiera de los motivos alegados en el escrito de apelación.''

El apelante discute, dentro de este señalamiento, los 12 errores que le imputó a la Comisión de Servicio Público en su escrito de apelación para ante la corte de distrito.

La corte inferior, después de sintetizar dichos doce señalamientos por las razones que se han dicho, resolvió en resu-

men lo siguiente. En cuanto al primero, que aun asumiendo que la petición adolece de ciertos defectos técnicos, éstos quedaron subsanados por la evidencia, de la que aparece que los hechos probados justifican y hacen necesaria en bien de la justicia la concesión del desvío solicitado por el querellante. Y dijo:

"Es tan insustancial la oposición del Municipio de Guayanilla, que en verdad no acertamos a comprender los móviles que inspiran tanto ardor y tanto ensañamiento contra el querellante. Tal parece que el alcalde de Guayanilla (de los autos resulta que la Asamblea no ha autorizado esta oposición) se propone boicotear de tal modo el negocio del querellante, que le obligue contra su voluntad y acaso en detrimento de sus intereses, a moler sus cañas en determinada factoría azucarera."

En cuanto al segundo y tercero dijo que la orden de la Comisión era clara y terminante y que contenía los *findings* (relación de hechos probados) en que descansaba, porque adoptó "en todas sus partes" el informe de su presidente, del que claramente surgían los hechos que aquélla estimó probados y que definitivamente puso fin a la controversia.

En relación con el cuarto resolvió con sobrada razón, a nuestro juicio, que la Comisión no dirimió en su orden ningún conflicto de título porque en ningún momento "insinuó siquiera el municipio que el terreno donde se iba a construir el desvío fuera de su propiedad"; que la contención original del interventor era que la construcción del desvío aumentaría el tránsito del camino abandonado, contención ésta que varió posteriormente, alegando que el desvío hacía más peligroso dicho camino; que no impugnó la propiedad o por lo menos la posesión que la compañía querellada alegaba tener sobre el terreno en cuestión por un término no menor de trece años en la fecha en que se celebraron las audiencias ante la Comisión de Servicio Público. Al argumento del municipio de que el último párrafo del artículo 38 de la Ley Orgánica no le confiere tal autoridad a la Asamblea Legislativa, replica la corte que dicho párrafo no es la única fuente adonde la Asam-

blea Legislativa puede recurrir en busca de autoridad para delegar poderes a la Comisión; que otra fuente de poderes la puede encontrar el apelante en aquella otra parte del antepenúltimo párrafo del mismo artículo 38 de la Ley Orgánica, que dice:

". . . Dicha Comisión queda facultada para desempeñar, y se le ordena que desempeñe, todas las funciones ejecutivas relacionadas con las corporaciones de servicio público que hasta ahora se han conferido por la Ley al Consejo Ejecutivo, y aquellos deberes y funciones adicionales que se confieran a dicha Comisión por la Asamblea Legislativa."

Y al otro argumento del apelante al efecto de que aun asumiendo que la Asamblea Legislativa tuviera facultad para delegar tal autoridad, no lo ha hecho para "conexiones" de desvíos aunque sí para su "instalación," de acuerdo con el caso de *Re Lycoming Edison Co.*, P.U.R. 1917–C, 73, contesta la corte que dicho caso no sostiene su tésis sino que le es decisivamente adverso, expresándose así:

"En primer término, el caso citado no es del Tribunal Supremo ni de ningún otro Tribunal de Pennsylvania. Es una resolución de la Comisión de Servicio Público de aquel Estado y lo que resuelve es que la Comisión no tiene facultades para ordenar a un ferrocarril que construya un desvío, cuando para así hacerlo tiene que utilizar terrenos no pertenecientes al ferrocarril, al peticionario o a cualquiera otra persona que voluntariamente lo ceda."

En cuanto a que la orden dictada por la Comisión no está justificada por el *finding,* sostuvo la corte inferior que siendo el terreno donde se ordenó construir el desvío propiedad del ferrocarril, comprometiéndose el peticionario a sufragar los gastos que la construcción del mismo ocasione, teniendo derecho a usar el desvío no sólo el peticionario sino todas aquellas personas que lo necesitaren, sin distinción o preferencia alguna, habiéndose demostrado la necesidad de su construcción, y quedando en todo tiempo bajo el control de la compañía del ferrocarril, no puede concluirse, como sostuvo el apelante, que la orden era injustificada.

Y ahora, en cuanto al sexto y séptimo errores, transcribimos de la resolución de la corte inferior la disposición que de los mismos hizo:

"En cuanto al peligro que pueda constituir la construcción del desvío en el sitio indicado, la Comisión de Servicio Público oyó prueba suficiente sobre la materia, sostenida por los técnicos de la compañía de ferrocarriles, quienes aseguran que debido a las agujas modernas que ahora se usan en la conexión de los desvíos, no habrá el peligro que señalan el apelante y sus testigos. La Comisión resolvió el conflicto a favor del querellante, y creemos que su conclusión está sostenida por la prueba.

"Finalmente, no vemos por qué razón legal la Comisión, en casos extraordinarios como el presente, no pueda, en bien de la justicia, dejar en suspenso o prescindir de su propia regla que prohíbe la conexión de un desvío a menos de 2 Kms. de distancia de otro. Téngase en cuenta que el desvío 'Peñoncillo' no solamente está fuera de uso, sino que es inservible por razón del sitio donde está emplazado. De hecho no existe tal desvío. Además, una regla de una junta o comisión no puede equipararse a una ley que no puede dejar de regir a menos que sea derogada por otra ley. En distintas ocasiones, cuando los fines de la justicia lo han demandado, nuestro Tribunal Supremo ha dejado de aplicar sus propias reglas. En este caso la Comisión hizo buen uso de su discreción dejando de aplicar la regla citada, para evitar una injusticia."

El juez de la corte inferior dispuso, a nuestro juicio, correctamente de los doce errores que le fueron señalados. Su criterio se ajusta al espíritu de la ley.

El séptimo error se refiere a la condena en costas y honorarios. La temeridad del apelante es patente. Así lo estimó la corte inferior en su opinión, y con sus manifestaciones estamos de perfecto acuerdo. Esa temeridad ha trascendido, y es palpable en esta apelación. No sólo debe desestimarse el séptimo error señalado, sino que, haciendo uso de la facultad que a este Tribunal Supremo le confiere el artículo 327 del Código de Enjuiciamiento Civil, según fué enmendado por la Ley núm. 69 de 11 de mayo de 1936 (Leyes de ese año, pág. 353), debe condenarse al municipio apelante a pagar al ape-

lado Stella Rodríguez la suma de $150 para satisfacer los honorarios de su abogado en esta apelación.

*La sentencia de la corte inferior debe ser confirmada.*