PUEBLO INTERNATIONAL, INC., demandante y recurrido, *v.* HÉCTOR RIVERA CRUZ, ETC., demandados y peticionarios.

*Número:* CE-86-209      *Resuelto:* 25 de abril de 1986

---

*Rafael Ortiz Carrión, Procurador General, Ricardo E. Alegría Pons* y *Lorenzo Vilanova Alfonso, Procuradores Generales Auxiliares,* abogados de El Pueblo, peticionario; *Manuel A. Guzmán, Ramón Coto Ojeda* y *McConnell, Valdés, Kelley, Sifre, Griggs & Ruiz Suria,* abogados del recurrido.

## SENTENCIA

Vista la petición de *certiorari* y los escritos de todas las partes, y luego de evaluar los argumentos vertidos en la vista oral celebrada por este Tribunal, se expide el auto y se dicta sentencia que deja sin efecto la orden emitida por el Tribunal Superior de Puerto Rico, Sala de San Juan, de 3 de abril de 1986. Se devuelve el caso al tribunal de instancia para que previa la celebración de vista, con audiencia a todas las partes con interés, resuelva si debe ratificar su actuación al amparo de las disposiciones de las Reglas 56.3 y 56.5 de las de Procedimiento Civil de 1979 o deje sin efecto la sentencia de 25 de septiembre de 1985 a la luz de las disposiciones de la Regla 49.2 del citado cuerpo de reglas, o cualesquiera pronunciamientos que en derecho entienda procedentes. Atendida la naturaleza del caso de epígrafe, se ordena la remisión inmediata del mandato.

Así lo pronunció y manda el Tribunal y certifica el señor Secretario General Interino. El Juez Presidente Señor Pons Núñez disiente en cuanto a la disposición de la sentencia de este Tribunal que deja sin efecto la orden emitida por el tribunal de instancia de 3 de abril de 1986; concurre con los otros pronunciamientos contenidos en la referida sentencia; y concurre, además, con la opinión emitida por el Juez Asociado Señor Ortiz en todo aquello que no es incompatible con lo expresado por él. Los Jueces Asociados Señores Rebollo López, Naveira de Rodón y Hernández Denton emitieron por separado opiniones concurrentes y disidentes. El Juez Asociado Señor Ortiz emitió opinión concurrente. El Juez Asociado Señor Alonso Alonso se une a la opinión del Juez Presidente Señor Pons Núñez en su parte concurrente y se une,

igualmente, a la opinión emitida por el Juez Asociado Señor Ortiz. El Juez Asociado Señor Negrón García se inhibió.

(*Fdo.*) Heriberto Pérez Ruiz
*Secretario General Interino*

—O—

Opinión concurrente del Juez Asociado Señor Ortiz.

Los demandados-peticionarios, funcionarios del Estado Libre Asociado de Puerto Rico, solicitan que expidamos auto de *certiorari* para revisar una orden dictada por el Tribunal Superior, Sala de San Juan, que los obliga a abstenerse de poner en vigor, en cuanto a la demandante Pueblo International, Inc., la Ley de Cierre de Puerto Rico (Ley Núm. 306 de 15 de mayo de 1938), según enmendada, 33 L.P.R.A. secs. 2201–2205, y el Reglamento sobre Competencia Justa Núm. VII, hasta tanto se promulgue y convierta en efectivo el reglamento requerido por la Ley Núm. 100 de 4 de junio de 1983 (33 L.P.R.A. sec. 2201).[1] Para esta parte de la orden el tribunal no exigió fianza porque fue emitida para ejecutar la sentencia que había dictado el 25 de septiembre de 1985. Posteriormente, al amparo de la facultad inherente y jurisdicción auxiliar del tribunal, dispuso que en caso de que se promulgara el reglamento el mismo no sería efectivo hasta diez

---

[1] Esta ley añadió el subinciso 14 al inciso (b) del Art. 553 del Código Penal para crear una nueva exención a la prohibición general de abrir los domingos y días feriados. Dispone lo siguiente:

· "Los establecimientos comerciales que se hallan ubicados en la zona turística del Viejo San Juan, o en cualesquiera otras zonas así designadas por la Junta de Planificación o por la autoridad u organismo competente, según los criterios que para la designación de zonas turísticas han sido establecidos por las leyes vigentes, dedicados predominantemente a la venta de artículos o servicios de interés turístico, según así los defina por Reglamento el Departamento de Comercio, disponiéndose que si cualquier disposición de esta ley o su aplicación fuese declarada nula o inconstitucional, tal determinación no afectará las otras disposiciones de las secs. 2201 y 2202 de este título."

días después de notificarse a Pueblo. Para ello fijó una fianza de $2,000. Esta orden fue dictada sin vista previa (²) y notificada a las partes el 3 de abril de 1986.

El 4 de abril de 1986, a la 1:35 de la tarde, el Estado presentó recurso de *certiorari* ante este Tribunal y en moción separada solicitó que en auxilio de nuestra jurisdicción inmediatamente dejáramos sin efecto y consecuencia jurídica la orden prohibitoria. Ese mismo día a las 4:16 de la tarde, Pueblo sometió un memorando en oposición. Atendidos ambos escritos, emitimos la siguiente orden:

> A la moción en Auxilio de Jurisdicción radicada en el recurso de epígrafe por la parte demandada-peticionaria, no ha lugar en esta etapa. Dada la naturaleza de la controversia envuelta en este recurso, se señala vista oral para el viernes 11 de abril de 1986 a las 9:00 de la mañana.

Al iniciarse la vista oral declaramos sin lugar las mociones de intervención y de *amicus curiae* presentadas por el Centro Unido de Detallistas, ISAACAR, Inc. y la Asociación de Mayoristas, Importadores y Detallistas de Alimentos de Puerto Rico, Inc., respectivamente. Una vez concluida la vista oral quedó sometido el recurso.

---

(²) El magistrado expuso las siguientes razones para expedir la orden sin vista previa:

"Estimamos que la forma y manera en que los demandados procedieron bajo la Ley de Cierre contra la demandante y sus empleados en el año 1981 (arrestándolos y acusándolos criminalmente a pesar de la existencia de una opinión y sentencia que había declarado inconstitucional la ley que le permitía al principal competidor de la demandante, Grand Union, abrir los domingos); la incursión, de dudosa validez, que hicieron los demandados en diecinueve (19) establecimientos de la demandante el 9 de marzo de 1986 sin que mediara una orden judicial; la representación del 10 de marzo de 1986 a los efectos de que dicha incursión no significaba que se impondría la Ley de Cierre contra el demandante puesto que no se había aprobado el Reglamento, para luego, el 25 de marzo de 1986 notificar al demandante de que está violando la Ley de Cierre, sabiendo los demandados que todavía el reglamento no se había aprobado y la total desatención del dictamen final de autos constituyen base suficiente para que este tribunal dicte la presente sin la celebración de vista previa."

Para una mayor comprensión del asunto ante nos, debemos hacer un breve recuento de los procedimientos en instancia.

El 15 de diciembre de 1980 Pueblo International, Inc., presentó una solicitud de sentencia declaratoria para impugnar la validez de la Ley de Cierre, *supra*, y el Reglamento sobre Competencia Justa Núm. VII y su aplicación discriminatoria o selectiva. Luego de varios trámites, el 3 de febrero de 1981, el tribunal dictó orden de *injunction* preliminar y le ordenó a los funcionarios del Estado cesar y desistir de poner en vigor la Ley contra Pueblo International, Inc. El 29 de junio de 1981 denegamos el *certiorari* solicitado por los demandados.

Luego de una vista solicitada por Pueblo, el 3 de diciembre de 1982, el Juez Guillermo Arbona Lago, a instancias del Estado, ordenó que el caso quedara en archivo activo hasta nueva orden. El 4 de diciembre de 1984 el tribunal dictó una orden y mantuvo el caso archivado por seis meses adicionales ya que el Estado no varió su posición de no poner en vigor la Ley contra ningún supermercado hasta que se resolviera un pleito pendiente en el Tribunal federal. El 10 de junio de 1985 Pueblo informó que se había aprobado la Ley Núm. 100, *supra*, y solicitó que el caso se mantuviera en el calendario de casos activos o que se señalara una conferencia entre abogados. El 20 de junio los demandados informaron que por no haberse promulgado el reglamento exigido por la Ley Núm. 100, *supra*, no habían tomado acción alguna para aplicar a ningún establecimiento comercial la Ley de Cierre, *supra*. Solicitó que el caso se mantuviera en el calendario de casos activos. El 28 de junio de 1985 reiteraron dicha posición. El 9 de julio de 1985 el tribunal señaló un *status conference* para el 9 de septiembre y la vista en su fondo para el 1ro y 2 de octubre de 1985.

El 6 de septiembre de 1985 los demandados, en su carácter de funcionarios del Estado, radicaron un escrito donde solicitaron que se dejara sin efecto el *injunction* preliminar por

resultar éste académico y que se desestimara la petición de sentencia declaratoria "porque cualquier opinión sobre un estatuto que *no ha sido promulgado* y sobre hechos que no se conoce aún cuáles serán, sólo podría ser prematura, especulativa e ineficaz". (Énfasis suplido.)

En lo pertinente adujeron, en apoyo de su solicitud, que como el reglamento no había sido aprobado, resultaría prematura cualquier interpretación sobre la validez de la Ley y el Reglamento. Surge del escrito que en ese momento la política pública del Estado era que no implantaría la Ley hasta que se aprobara el reglamento requerido por la Ley Núm. 100, *supra.* Alegaron que la Ley de Cierre, *supra*, había sido tan extensa y trascendentalmente modificada que, en realidad, se estaría cuestionando la constitucionalidad de un estatuto que hace tres años dejó de existir, tal como era. (³)

El 9 de septiembre se señalaron todas las mociones pendientes para el 20 de septiembre; en esa ocasión los abogados de las partes y el juez se reunieron en el estrado fuera del registro. Luego el tribunal anunció que consideraba académico el procedimiento y vertió para el registro las razones para ello. (⁴)

El 25 de septiembre de 1985 se dictó la sentencia que ordenó el archivo de la causa sin perjuicio y sin imposición de costas, gastos y honorarios de abogado. Sostuvo la posición del Estado y concluyó que a dicha fecha no existía mandato de ley suficiente que obligara a Pueblo a cerrar sus establecimientos; expresó que no tenía ante sí una controversia justiciable y como consecuencia, luego del 4 de junio de 1983, la causa se convirtió en académica al no tener los tribunales del país jurisdicción para emitir opiniones consultivas.

---

(³) También se señalaba que resultaba discriminatorio que Pueblo fuera la única empresa favorecida por el *injunction*.

(⁴) De la minuta y el resto de los autos no surge la posición asumida por las partes. Es claro que ninguna de ellas objetó.

El 2 de abril de 1986 Pueblo presentó una moción para enmendar la demanda, acompañada de la segunda demanda jurada sobre sentencia declaratoria e *injunction*. El tribunal de instancia proveyó lo siguiente en torno a la moción:

No ha lugar. La sentencia del 25 de septiembre de 1985 dispuso de la totalidad del caso y no tenemos jurisdicción para considerar la presente, García v. Méndez, 102 D.P.R. 383, 393.

Ese mismo día Pueblo presentó un escrito titulado Solicitud de Orden sobre Remedios Provisionales en Aseguramiento de Sentencia, acompañado de un Memorial de Hechos y Autoridades. En la súplica de la moción solicitaba los siguientes remedios:

A. que se abstengan de poner en vigor la Ley de Cierre, el Reglamento sobre Competencia Justa Núm. VII o cualquier otro amparado en dicha ley, contra la demandante y sus empleados, aun cuando fuera aprobado y vigente el reglamento bajo la Ley 100, sin antes haber comparecido ante este Honorable Tribunal para mostrar causa por la cual no deba emitirse una orden sobre aseguramiento de sentencia prohibiéndoles poner en vigor dichas leyes o reglamento durante la pendencia de este litigio, previo los trámites de rigor; y

B. que notifiquen inmediatamente a los abogados de la demandante y radiquen en el Tribunal cualquier reglamento que bajo la Ley 100 sea promulgado indicando la fecha de su efectividad.

La orden de aseguramiento aquí en cuestión se solicita sin notificación o vista previa a la parte adversa o sus abogados puesto que ello brindaría la oportunidad a los demandados, cosa que no es extraña con base a sus pasadas y presentes actuaciones, de promulgar de forma súbita y sin previa notificación el reglamento en cuestión y así proceder a (1) desacatar la Sentencia de 1985; (2) hacer nuevas incursiones en los treinta y cuatro (34) establecimientos de la demandante de la misma o peor naturaleza que las que llevaron a cabo el pasado 9 de marzo de 1986 en diecinueve de los treinta y cuatro (34) establecimientos de la demandante, y/o (3) proceder a arrestar, acusar y encarcelar a oficiales

y empleados gerenciales de la demandante, todo ello en flagrante menosprecio de los derechos constitucionales que la demandante tiene y desea validar para sí y sus empleados.

Determine el Honorable Tribunal la fianza que debe mediar para la expedición de la orden de aseguramiento de sentencia y que bajo esta Parte II se solicita, si es que la que obra en autos no continúa vigente o es insuficiente en cantidad para responder de las costas y gastos que se pudieran irrogársele a los demandados, dictando el Honorable Tribunal cualquier otro remedio que en ley sea procedente en protección de los derechos de la demandante y sus empleados.

El tribunal emitió la orden objeto de este recurso sin celebrar vista para oír a los representantes del Estado. Éste acude directamente ante nos sin solicitar del tribunal que reconsiderara su orden, que le diera una oportunidad de ser oído o, en la alternativa, que se dejara sin efecto la orden hasta tanto revisáramos la misma.

## I

La Regla 56.5 de Procedimiento Civil dispone lo siguiente:

No se concederá ninguna orden bajo esta Regla 56 para hacer o desistir de hacer cualquier acto específico, sin una notificación a la parte adversa, a menos que aparezca claramente de los hechos específicos acreditados por declaración jurada que el solicitante sufrirá perjuicios, daños o pérdidas irreparables antes de notificarse y de celebrarse una vista sobre la solicitud. Dicha orden *ex parte* será efectiva al notificarse. Cualquier parte afectada podrá, en cualquier tiempo, presentar una moción para que se modifique o anule la orden y dicha moción se señalará para vista en la fecha más próxima posible y nunca más tarde de cinco (5) días de haberse presentado la moción y tendrá precedencia sobre todos los demás asuntos. A los propósitos de dicha vista, una notificación de dos (2) días a la parte que obtuvo la orden, o la notificación más corta que el tribunal prescriba, será suficiente.

Los demandados-peticionarios no utilizaron la vía procesal que allí se le concede de solicitar al tribunal que se modificara o anulara la orden. Ello a pesar de que el tribunal estaba obli-

gado a señalarla para vista en la fecha más próxima posible. En *Comisionado de Seguros* v. *Tribunal Superior*, 100 D.P.R. 546, 554 (1972), revisamos la orden impugnada porque el tribunal al dictarla tuvo oportunidad adecuada para considerar el planteamiento que se hacía en revisión. Para ello acogimos la norma de *Autoridad Fuentes Fluviales* v. *Corte*, 65 D.P.R. 935, 937–938 (1946). A tenor con dichos precedentes, si bien no es un requisito jurisdiccional o condición previa que se pida la reconsideración antes de solicitar un *certiorari*, el tribunal debe tener esa oportunidad. ([5])

En el caso ante nos, el examen que hemos hecho de la totalidad de los autos, los escritos radicados a favor y en contra de este recurso y especialmente los argumentos vertidos por los abogados de las partes en la extensa y fructífera vista oral que celebramos, nos convencen de que las cuestiones principales planteadas por las partes no fueron objeto de discusión y resolución por el tribunal de instancia. Dicho en otra forma, el tribunal que dictó la orden no ha tenido la oportunidad de resolverlas. Veamos algunas de ellas.

El Estado sostiene que incidió el tribunal al expedir una orden para asegurar la sentencia anterior, cuando ésta sólo dispuso el archivo sin perjuicio de la acción o causa por considerar que la misma no era justiciable. Plantea que una sentencia de archivo sin perjuicio no puede ser ejecutable. Existe una disputa real entre las partes sobre los efectos y significado de dicha sentencia. Por un lado el Estado tiene la posición antes reseñada. Por otro, Pueblo insiste en que del texto de la sentencia, de las constancias del expediente y de lo acontecido en la vista del 20 de septiembre de 1985, se desprende que el magistrado adjudicó, como cuestión de hecho, que los

---

([5]) Contrario a la norma que hemos ratificado de que para solicitar la revisión de una decisión administrativa puede exigirse dicha gestión previa. *Lasalle* v. *J.A.C.L.*, 115 D.P.R. 805 (1984); *Tormos & D.A.C.O.* v. *F. R. Technology*, 116 D.P.R. 153 (1985) y *G.M. Overseas Dist. Corp.* v. *D.A.C.O.*, 114 D.P.R. 5 (1983).

demandados hasta ese momento habían asumido la posición basada en su interpretación del estatuto de que hasta que no se promulgara el reglamento no podía ponerse en vigor la Ley de Cierre. Los demandados señalaban que la Ley había dejado de existir hasta que se promulgara dicho reglamento. El tribunal en su sentencia expuso que en ese momento no había mandato de ley para implantar la política pública reflejada en la Ley de Cierre. Si se adjudicó o no en la sentencia esa cuestión de derecho, es el propio tribunal sentenciador el que debe determinarlo en primera instancia. Es éste el que debe resolver si el caso se adjudicó en los méritos o meramente resolvió los puntos de derecho sobre la justiciabilidad de la controversia. Debe considerarse si hay o no una decisión final en los méritos que dé lugar a la defensa de cosa juzgada. *Rivera* v. *Insurance Co. of P.R.*, 103 D.P.R. 91, 94 (1974); si el archivo sin perjuicio excluye la aplicabilidad de dicha defensa, *Fresh-O-Baking Co.* v. *Molinos de P.R.*, 103 D.P.R. 509 (1975), o si el fundamento de que la acción era prematura operaba como un impedimento, *Fresh-O-Baking*, ante. Debe ser el juez de instancia el que resuelva si bajo las circunstancias del caso rige contra el Estado la doctrina de los actos propios, impedimento en equidad y de la buena fe. *Berríos* v. *U.P.R.*, 116 D.P.R. 88 (1985); *Figueroa Cancel* v. *E.L.A.*, 114 D.P.R. 684 (1983); *García Colón* v. *Srio. de Hacienda*, 99 D.P.R. 779 (1971).[6] Una de las mayores interrogantes en este caso gira alrededor del efecto de interpretación de la frase "sin perjuicio" usada por el tribunal en su sentencia del 25 de septiembre de 1985. En la vista oral nada pudieron aportar las partes sobre esto. ¿Fue la intención del tribunal que una vez se aprobara el reglamento bajo la Ley Núm. 100, Pueblo podía solicitar reabrir la acción para impugnar la totalidad del estatuto o si,

---

[6] Ello ante el hecho indubitable y admitido por el Procurador General de que el Estado cambió su posición. Hasta abril de 1986 sostenía que la Ley dependía del Reglamento. Ahora adopta una posición diametralmente opuesta, la cual anuncia a los 180 días de la sentencia.

por el contario, debía radicar una acción independiente? Esto resulta importante ya que si era la primera, puede entenderse que no se aplicaba el término de seis meses de la Regla 49.2 y ante el cambio de posición del Estado el tribunal podía permitir que se enmendara la demanda, considerar las mociones del demandante como unas para dejar sin efecto la sentencia del 25 de septiembre y reabrir los procedimientos. (⁷) Si es la segunda, obviamente no tenía jurisdicción o facultad para conceder los remedios provisionales aquí impugnados.

En resumen, estos planteamientos debieron haberse hecho en instancia. Es el propio juez sentenciador el que está en mejor condición de interpretar sus propios dictámenes. No habiéndosele dado esta oportunidad, nos abstendremos de intervenir y devolveremos el caso con instrucciones de que se considere esta petición como una bajo la Regla 56.5, (⁸) y las mociones de la recurrida como una solicitud bajo la Regla 49.2, celebre una vista inmediatamente y resuelva prontamente tan importante controversia. Deberá, además, considerar las peticiones de los interventores y el *amicus curiae*.

## II

Nos queda por resolver si debemos mantener en vigor la orden que le permite a Pueblo abrir sus supermercados los domingos y días feriados. Como apuntáramos anteriormente esta orden se dictó sin vista.

La Regla 56.5 de Procedimiento Civil dispone que no se concederá ninguna orden bajo esta Regla para hacer o desistir de hacer cualquier acto específico sin una notificación a la parte adversa, a menos que aparezca claramente de los hechos

---

(⁷) El tribunal deberá considerar si erró o no al denegar el permiso para enmendar la demanda.

(⁸) Véase que si la orden revisada se considera como una de interdicto, era deber de los demandados solicitar al tribunal, en primera instancia, que se modificara o dejara sin efecto. *Peña* v. *Federación de Esgrima de P.R.*, 108 D.P.R. 147 (1978).

específicos acreditados por declaración jurada que el solicitante sufrirá perjuicios, daños o pérdidas irreparables antes de notificarse y de celebrarse una vista sobre la solicitud.

Al interpretar dicha Regla, en *P.R. Telephone Co.* v. *Tribunal Superior*, 103 D.P.R. 200, 202 (1975), resolvimos que la parte promovente de una orden de este tipo tiene el peso de probar su procedencia y antes de emitirla el tribunal debe considerar los siguientes criterios:

> . . . la naturaleza de los daños que pueden ocasionárseles a las partes de concederse o denegarse el *injunction;* su irreparabilidad o la existencia de un remedio adecuado en ley; la probabilidad de que la parte promovente prevalezca eventualmente al resolverse el litigio en su fondo; la probabilidad de que la causa se torne en académica de no concederse el *injunction* y, sobre todo, el posible impacto sobre el interés público del remedio que se solicita. 32 L.P.R.A. sec. 3523; 11 Wright & Miller *op. cit.*, 430-1, 457 *et seq.; Developments in the Law—Injunctions,* 78 Harv. L. Rev. 994, 1001–1012 (1965).[9]

Al no oír a la parte contraria el tribunal no estaba en condiciones de emitir juicio sobre la naturaleza de los daños que pudieran ocasionársele al Estado en caso de concederse el remedio y sobre todo el posible impacto sobre el interés público del remedio que se solicitaba. Al emitir su orden tampoco consideró el daño que le pudo ocasionar a terceras personas, naturales o jurídicas, que fueron afectadas por su orden.

Nada impedía que el tribunal señalara una vista para oír a todas las partes afectadas y, de entenderlo necesario, resolviera prontamente.

En este caso la orden surtió un efecto ulterior sobre el interés público, sobre un número indeterminado de empresas que, a pesar de estar similarmente situadas a Pueblo, no tu-

---

[9] Criterios comunes que se deben considerar al expedir un *injunction*. *A.P.P.R.* v. *Tribunal Superior*, 103 D.P.R. 903 (1975).

vieron el beneficio de la orden([10]) y sobre un grupo, posiblemente mayor, que está exento de las prohibiciones de la Ley de Cierre.

A la luz de las circunstancias del caso y los efectos de la orden, aplicamos en este caso la sabia norma adoptada en *A.P.P.R.* v. *Tribunal Superior*, 103 D.P.R. 903, 906 (1975).

El *injunction* que desde su temprana etapa de entredicho está concediendo un remedio que en el procedimiento usual ordinario no se alcanza hasta vencer en juicio, debe expedirse con sobriedad y sólo ante una demostración de clara e intensa violación de un derecho. La orden de entredicho, como todo remedio provisional dirigido a asegurar la efectividad de sentencia, ha de pasar por el exigente tamiz de discreción judicial que ha de ejercitarse en cuidadosa ponderación del interés de todas las partes, y con mayor rigor cuando una de éstas no ha sido oída antes de librar la orden. Esta norma de moderación en el uso del *injunction* tiene su máxima aplicación cuando su efecto restrictivo ha de operar sobre una agencia u organismo de servicio público con grave impacto y erosión del derecho de las numerosas personas, del pueblo en general, a quien sirve la corporación pública.

A tenor con lo anterior, dejaríamos sin efecto la orden de 3 de abril de 1986, sin perjuicio de que una vez se celebre la vista ordenada en la Parte I de esta ponencia, y luego de oír a todas las partes que así lo soliciten conforme a derecho, se reestablezca la orden prohibitoria, de ser la misma procedente.

### III

Ya sometido este recurso y luego de circularse esta ponencia, el Procurador General informó mediante moción que el 17 de abril de 1986, en virtud de lo dispuesto por la Ley Núm. 100 de 4 de junio de 1983 (33 L.P.R.A. sec. 2201(b)(14)) el

---

([10])Aunque el tribunal tenía la facultad para hacer extensiva su orden a este grupo, *Ortiz Angleró* v. *Barreto Pérez*, 110 D.P.R. 84, 93 (1980), y *Gregory* v. *Litton Systems, Inc.*, 316 F. Supp. 401, 403 (C.D. Cal. 1970), optó por no hacerlo. Desconocemos las razones que tuvo.

Departamento de Comercio aprobó el Reglamento para Identificar Establecimientos Comerciales Exentos de la Ley de Cierre en Zonas de Interés Turístico. Acompañó copia de la orden ejecutiva del Gobernador del Estado Libre Asociado de Puerto Rico, Hon. Rafael Hernández Colón, en la que se determina y certifica que debido a las circunstancias, el interés público requiere que las disposiciones de dicho Reglamento comiencen a regir inmediatamente después de su aprobación, sin la dilación de su publicación previa, a tenor con lo dispuesto en la Sec. 11 de la Ley Núm. 112 de 30 de junio de 1957, según enmendada. De la certificación de la Secretaria Auxiliar de Estado surge que el Reglamento se aprobó el 17 de abril de 1986 a las 8:00 P.M.

Hasta este momento las partes no han informado la fecha en que los peticionarios notificaron a la recurrida con copia fiel de dichos documentos. Como la orden de 3 de abril proveía que el Reglamento, y por consiguiente la Ley, no sería vigente en cuanto a Pueblo se refiere, hasta diez días después de la notificación, subsiste la controversia entre las partes.

A pesar de que estamos dejando sin efecto la orden prohibitoria, el tribunal de instancia debe cumplir con lo ordenado en la Parte I.

Como hemos señalado, si el tribunal determina que el archivo sin perjuicio permite a la demandante-recurrida proseguir, en este mismo caso, con su impugnación de la validez constitucional del estatuto, según enmendado por la Ley Núm. 100, *supra*, y el Reglamento de 17 de abril, el recurso no es académico. Por otro lado, podría resolver que el caso ya ha finalizado y remitir a las partes a una acción independiente.

Para evitar una multiplicidad de procedimientos y de planteamientos jurisdiccionales y procesales, debe el tribunal resolver expresamente cuál es la vía procesal disponible.

La vista le daría la oportunidad al tribunal de considerar, en caso de que permita la reapertura del caso, si procede una orden interlocutoria, ya sea en aseguramiento de sentencia

bajo la Regla 56 o una interdictal bajo la Regla 57, ([11]) que paraliza la vigencia de la Ley, según enmendada.

—O—

Opinión concurrente y disidente emitida por el Juez Asociado Señor Rebollo López.

Pendiente un pleito sobre sentencia declaratoria radicado por el demandante-recurrido Pueblo International, Inc. (Pueblo) ante el Tribunal Superior de Puerto Rico, Sala de San Juan, en el cual se impugnaba la constitucionalidad de la Ley Núm. 306 de 15 de mayo de 1938 —conocida como la Ley de Cierre— y vigente una orden de *injunction* preliminar que le prohibía al demandado Estado Libre Asociado de Puerto Rico (el Estado) poner en vigor la referida Ley contra Pueblo, el Señor Secretario de Justicia de Puerto Rico, Hon. Héctor Rivera Cruz, radicó una moción de fecha 6 septiembre de 1985, la cual tuvo el efecto de ponerle fin al pleito.

En dicha moción, el Señor Secretario de Justicia le informó al foro de instancia, en síntesis y en lo pertinente, que en virtud de unas enmiendas que había sufrido la Ley de Cierre en el año 1983 —las cuales exigían que la Junta de Planificación designara las "zonas turísticas en las cuales no aplicará la Ley de Cierre" y el Departamento de Comercio redactara y promulgara un reglamento definiendo "qué tipo de artículos, servicios y establecimientos" están exentos de la aplicación de la Ley([1])— el Estado no implementaría "el precepto dominical de la Ley de Cierre hasta que [fuera] promulgado el reglamento en cuestión y [fueran] designadas las áreas de interés turístico". Informó, en adición, que en su opinión en dicho caso se estaba cuestionando "la constitucio-

---

([11]) D. Rivé Rivera, *El Injunction en Puerto Rico*, 41 Rev. Col. Abo. P.R. 135 (1980); D. Rivé Rivera, *El Injunction en Puerto Rico*, 53 Rev. Jur. U.P.R. 341, 354 y ss. (1984).

([1]) Véase el párrafo 5(f)(1) y (2) de la referida moción de fecha 6 de septiembre de 1985.

nalidad de un estatuto que hace tres años dejó de existir tal como era". Solicitó el Secretario de Justicia, por último, del foro de instancia que desestimara "la Petición de Sentencia Declaratoria, porque cualquier opinión *sobre un estatuto que no ha sido promulgado* y sobre hechos que no se conoce aún cuáles serán, *sólo podría ser prematuro, especulativo e ineficaz*". (Énfasis suplido.)

La Sala de San Juan del Tribunal Superior —Hon. Guillermo Arbona, Juez— acogió y adoptó el planteamiento del Secretario de Justicia. Expresó en la sentencia que dictara con fecha de 25 de septiembre de 1985, que a esa "fecha *no existe mandato de ley suficiente* que obligue al demandante al cierre de sus establecimientos sitos en Puerto Rico en cuanto a horas y días se refiere". Entendiendo que la impugnación radicada por el demandante Pueblo era prematura por cuanto no existía ley que impugnar, el foro de instancia dictó sentencia "ordenando el archivo sin perjuicio" de la causa radicada. Copia de la referida sentencia fue archivada en autos con fecha de 26 de septiembre de 1985.

Exactamente seis meses más tarde —el día 25 de marzo de 1986— el Estado cambió de parecer. Mediante carta suscrita por el Señor Secretario de Justicia de esa misma fecha —notificada ese día a las 6:30 P.M.— se le informó a Pueblo que el Estado, aun cuando no se había promulgado los antes mencionados reglamentos, se proponía implementar la Ley de Cierre. Ello motivó que Pueblo acudiera ante el Tribunal Superior, Sala de San Juan, radicando en primer término, una segunda demanda enmendada jurada sobre sentencia declaratoria e *injunction* en relación con la cual el tribunal de instancia se declaró sin jurisdicción. Ese mismo día, Pueblo radicó una solicitud de orden sobre remedios provisionales en aseguramiento de sentencia en la cual, bajo juramento, hizo referencia a los daños que había sufrido debido a la actuación del Estado; cuestionó la constitucionalidad de la Ley de Cierre, y solicitó que se le ordenara al Estado que se abstuviera de

poner en vigor la referida Ley. Dicho foro —Hon. Guillermo Arbona, Juez— con fecha de 3 de abril de 1986 emitió, sin celebrar vista, la orden aquí en controversia. Expresando que la sentencia que emitiera el 25 de septiembre de 1985 era "final, firme e inapelable", que el Estado había "acatado" su dictamen a los efectos de que "no existía mandato de ley suficiente que obligara a la demandante [Pueblo] al cierre de sus establecimientos", que dicho dictamen constituía "absoluto impedimento para que dicha ley [Ley de Cierre] se pueda implementar" en contra de Pueblo, el foro de instancia le ordenó al Estado abstenerse de así hacerlo hasta tanto se promulgara el reglamento. En adición, dispuso que en caso de que así se hiciera, dicho reglamento sería efectivo en cuanto a Pueblo hasta pasados diez (10) días de éste haber sido notificado. En relación con esta parte de la orden se le exigió a Pueblo una fianza de $2,000.

Inconforme el Estado acudió, vía *certiorari*, ante este Tribunal el día 4 de abril de 1986. Radicó, en adición, una solicitud para que en "auxilio de nuestra jurisdicción" dejáramos sin efecto la orden emitida por el foro de instancia. Ordenamos la celebración de una vista oral, la cual se llevó a efecto el día 11 de abril de 1986.

## I

Independientemente de la etiqueta que entendamos procedente aplicarle a la acción tomada por el tribunal de instancia en el presente caso, no podemos eludir el hecho de que dicho foro pretendió, mediante la orden aquí recurrida, *ejecutar* la sentencia de archivo sin perjuicio que emitiera el 25 de septiembre de 1985. El problema con que nos confrontamos es que una sentencia de archivo, de ordinario, "deja la situación procesal en el mismo lugar que si la demanda nunca se hubiese presentado". 8B *Moore's Federal Practice* Sec. 41.05 (2), pág. 41-47 (1985). Ciertamente la sentencia emitida no obligaba al Estado a hacer nada; tampoco lo obligaba a abste-

nerse de hacer algo. Es por ello que el Estado, no resultando *como demandado* "perjudicado" en forma alguna por la sentencia emitida, no estaba en la obligación, desde el punto de vista procesal, de revisar la misma. Dicho de otra forma, el Estado no "acató" ni "consintió" dictamen alguno al no acudir ante este Tribunal en revisión de la sentencia de archivo. Si alguna parte estaba "obligada" a revisar la misma lo era el demandante Pueblo; ello, por cuanto la sentencia de archivo emitida le "privaba" de que se resolviera su planteamiento a los efectos de que la Ley de Cierre es inconstitucional.

Por los fundamentos anteriormente expresados, *de ordinario*, procedería que expidiéramos el auto solicitado y emitiéramos sentencia revocatoria de la orden de 3 de abril de 1986, sin ulteriores pronunciamientos. Principios de equidad y de sana administración judicial impiden, dados los hechos particulares del caso, que emitamos un dictamen tan limitado.

## II

Hemos expresado que la " 'buena fe', como norma interpretativa, significa confianza, seguridad y honorabilidad basada en ella. La palabra 'fe', fidelidad, quiere decir *que una de las partes se entrega confiadamente a la conducta 'leal' de la otra*". (Énfasis suplido.) *Berríos* v. *U.P.R.*, 116 D.P.R. 88, 98 (1985). No cabe la menor duda de que Pueblo confió en lo que le informara el Señor Secretario de Justicia en su moción de fecha 6 de septiembre de 1985; esto es, que el Estado no implementaría la Ley de Cierre hasta tanto se promulgaran los reglamentos "exigidos" por las enmiendas de 1983 por razón de entenderse que sin los mismos la Ley era "inexistente". No existía razón en esos momentos para no confiar en la palabra del "abogado" del Pueblo de Puerto Rico. Posiblemente debido a ello es que Pueblo "consintió" a la sentencia de archivo que emitiera el foro de instancia de conformidad con la referida moción.

Ciertamente el Estado y el Secretario de Justicia, como cualquier otra parte litigante y su abogado, tienen la libertad de cambiar de posición respecto a un asunto litigioso. Si bien ello es así, somos del criterio que el cambio no puede tener el efecto de dejar en estado de indefensión a la otra parte que confió de buena fe en la representación que se le hiciera. En otras palabras, cuando la posición originalmente asumida por un litigante causa unos efectos jurídicos, al abandonar posteriormente ese litigante dicha posición no puede pretender que la otra parte se perjudique por ello.

La conducta del Estado, aún más que la de cualquier otro litigante, debe caracterizarse por la estricta observancia de los principios elementales de juego limpio (*fair play*). Lo contrario conduciría a la anarquía y al caos en nuestro sistema de justicia. Merece destacarse el hecho de que el "cambio de posición" por parte del Gobierno ocurrió exactamente a los 180 días de haber sido archivada en autos la sentencia dictada por el foro de instancia. Pueblo fue notificado el día número 180 *a las 6:30 P.M.;* o sea, cuando ya no podía acudir ante el tribunal al amparo de la Regla 49.2 de las de Procedimiento Civil mediante una moción en solicitud para que se dejara sin efecto la sentencia de archivo por razón de haber transcurrido el término de seis (6) meses que establece dicha Regla para así hacerlo. Cruzarnos de brazos ante esta situación y meramente limitarnos a aplicar rígidamente las reglas pertinentes de procedimiento civil constituiría una abdicación de nuestra principal función: la de impartir justicia.

## III

Como es sabido, la Regla 49.2 de las de Procedimiento Civil de 1979 contempla o provee dos mecanismos distintos con el propósito de relevar a una parte de los efectos de una sentencia. El primero de ellos, mediante moción que debe ser radicada dentro del mismo pleito en un término razonable, el cual no puede exceder de seis (6) meses desde la fecha en que

se archivó en autos copia de la notificación de la sentencia. El segundo, mediante la radicación de una acción o pleito independiente.

Como expresáramos anteriormente, habiendo el Secretario de Justicia notificado a Pueblo de su intención de implantar la Ley de Cierre en el día número 180, a las 6:30 P.M., Pueblo estaba impedido de solicitar, *dentro del mismo procedimiento*, que se le *relevara* de la sentencia dictada al amparo de lo dispuesto por la citada Regla 49.2.

Ahora bien, la Regla 1 de las de Procedimiento Civil de 1979 dispone que dichas Reglas, las cuales rigen todos los procedimientos de naturaleza civil ante el Tribunal General de Justicia, se "interpretarán de modo que garanticen una solución *justa, rápida,* y *económica* de *todo* procedimiento". En obediencia de dicho mandato y con el propósito de hacer justicia a las dos partes aquí envueltas, somos del criterio que no hay nada que impida que el escrito radicado por Pueblo el 2 de abril de 1986 en solicitud de orden sobre remedios provisionales sea considerado como el "pleito independiente con el propósito de relevar a una parte de una sentencia, orden o procedimiento" que contempla la citada Regla 49.2 de Procedimiento Civil. (²) Como se recordará, en dicho escrito se hizo referencia *bajo juramento* a los daños sufridos por Pueblo como consecuencia del "cambio de posición" del Estado respecto a la implantación de la Ley de Cierre, se atacó la constitucionalidad de la referida ley y se suplicó del tribunal protección en cuanto a ello.

Como certeramente expresara este Tribunal en *Figueroa* v. *Banco de San Juan,* 108 D.P.R. 680, 689 (1979), la *acción independiente* que comprende la Regla 49.2 con el propósito

---

(²) Es doctrina firmemente establecida por este Tribunal que se concederá el remedio a que tenga derecho una parte independientemente de cómo haya denominado la acción radicada. Véanse Reglas 43.6 y 70 de las de Procedimiento Civil de 1979. *A.T.P.R.* v. *Padín Santiago,* 104 D.P.R. 426 (1975).

de relevar a una parte de una sentencia es de aplicación "a los casos en que ha transcurrido el término fatal de seis meses *y las circunstancias sean de tal [naturaleza] que el tribunal pueda razonablemente concluir que mantener la sentencia constituiría una grave injusticia contra una parte* que no ha sido negligente en el trámite de su caso y que, además, tiene una buena defensa en los méritos" y a situaciones donde la sentencia dictada ha sido obtenida "mediante fraude, error o accidente *y cuando una parte se ha visto impedida de presentar sus defensas por maquinaciones y argucias de otra parte,* siempre y cuando no haya sido negligente en el trámite de su caso o haya incurrido en falta". (Énfasis suplido.)

Pueblo no fue negligente en la tramitación de la acción que radicara. El efecto real de que Pueblo confiara en el "compromiso" contraído por el Estado, mediante su moción de fecha 6 de septiembre de 1985, que desembocó en la sentencia de archivo dictada por el tribunal de instancia, fue el de privarle que se resolviera su planteamiento de que la Ley de Cierre es inconstitucional. Dicha parte merece la oportunidad de que se dilucide en sus méritos su planteamiento.

Por los fundamentos antes expresados, somos de opinión que se debería expedir el auto solicitado y dictar sentencia dejando sin efecto la orden emitida por el Tribunal Superior de Puerto Rico, Sala de San Juan, de fecha 3 de abril de 1986; devolviéndose el caso al referido foro con instrucciones para que considere el escrito de fecha 2 de abril de 1986 radicado por Pueblo como una acción independiente al amparo de la citada Regla 49.2, expida los correspondientes emplazamientos; ([3]) permita la intervención de todas aquellas partes con interés, y para la continuación de procedimientos ulteriores compatibles con lo antes expuesto.

---

([3]) Por haber establecido la sentencia que el archivo de la acción era "sin perjuicio", no procedería la defensa de cosa juzgada. *Rivera* v. *Insurance Co. of P.R.,* 103 D.P.R. 91 (1974).

—O—

Opinión concurrente y disidente emitida por la Juez Asociada Señora Naveira de Rodón.

Estamos de acuerdo con la conclusión de la mayoría del Tribunal de dejar sin efecto la orden del tribunal de instancia que prohíbe la implantación de la Ley de Cierre, Ley Núm. 306 de 15 de mayo de 1938, según enmendada, 33 L.P.R.A. secs. 2201–2205, contra el demandante-recurrido, Pueblo International, Inc., hasta que se aprobara por el Departamento de Comercio el reglamento dispuesto por la enmienda introducida a dicha Ley el 4 de junio de 1983 por la Ley Núm. 100 (33 L.P.R.A. sec. 2201).

I

Procede en primer término analizar la sentencia dictada el 25 de septiembre de 1985, que es la que sirvió de base a la orden de 3 de abril de 1986 que tenemos ante nuestra consideración. El tribunal utilizó básicamente dos fundamentos para llegar a su decisión: (1) "que a [esa] fecha no exist[ía] mandato de ley suficiente que oblig[ara] al demandante al cierre de sus establecimientos sitos en Puerto Rico"; (2) que no existía "una controversia real entre las partes de naturaleza justiciable". Ambos fundamentos se encuentran entrelazados, ya que parten de la premisa de que las enmiendas introducidas por la Ley Núm. 100, *supra*, a la Ley de Cierre, que requiere la aprobación de un reglamento por el Departamento de Comercio para la definición de los establecimientos sitos en las zonas de interés turístico dedicados predominantemente a la venta de artículos de tal género, imposibilitaban la implantación de dicha ley hasta que se aprobara el reglamento. En su parte dispositiva, la sentencia no contiene una orden ni prohíbe expresamente la ejecución de un acto. Se limita a hacer

252

referencia a los fundamentos y ordenar el archivo sin perjuicio. (¹)

De una lectura conjunta de la sentencia y la moción de los funcionarios del Estado, demandados-recurridos, que dio base a la misma, se puede colegir que el tribunal confió en las manifestaciones de política pública allí vertidas, y por ende, en el cumplimiento voluntario por parte del Estado de la prohibición de implantar la Ley de Cierre, implícita en los fundamentos de la sentencia. Al entender en la moción para ejecutar la sentencia o emitir la orden en aseguramiento de sentencia, la intención del tribunal, en el ámbito que abarca su dictamen, no perdió vigencia por el solo hecho de que se ordenó el archivo del caso sin perjuicio. Rechazamos la interpretación literalista de la sentencia, no es el nombre con que se denomina un acto el que determina su naturaleza, sino su contenido, según éste surge de un análisis del mismo y de todas las circunstancias que lo rodean. (²)

De ahí la conceptuación que sobre la sentencia hicieron las partes en términos de su declaración de derechos. No hay duda de que hubo un suspenso de la controversia principal, en cuanto a la vigencia y aplicación de la ley. Aun así el tribunal hace mención en la sentencia a la falta de un mandato de ley suficiente que permitiera poner en vigor la legislación en con-

---

(¹) La sentencia interpreta y analiza la Ley de Cierre, 33 L.P.R.A. secs. 2201–2205, según ésta quedó enmendada por la Ley Núm. 100 (31 L.P.R.A. sec. 2201), por lo que tenemos que entender que la demanda original quedó implícitamente enmendada por las posiciones adoptadas por las partes.

(²) Este mismo principio legal se recoge en la Regla 70 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III, Regla 70); *A.T.P.R.* v. *Padín Santiago,* 104 D.P.R. 426 (1975); *Correa Negrón* v. *Pueblo,* 104 D.P.R. 286, 293 (1975); *Soc. de Gananciales* v. *Soc. de Gananciales,* 104 D.P.R. 50, 52 (1975); *Lebrón Velázquez* v. *Romero Barceló,* 101 D.P.R. 915, 921 (1974); *Cruz* v. *Director de la Lotería,* 94 D.P.R. 260, 264 (1967).

Una norma similar la hemos adoptado en cuanto a la interpretación de estatutos. *Passalacqua* v. *Mun. de San Juan,* 116 D.P.R. 618 (1985); *Rivera Cabrera* v. *Registrador,* 113 D.P.R. 661, 664–665 (1982). En general sobre interpretación, véase también R. Elfrén Bernier, *Aprobación e interpretación de las leyes en Puerto Rico,* Ed. Cultura, 1963.

troversia. Igualmente, la posición asumida por el Estado al abstenerse de aplicar la ley contribuyó poderosamente a la paralización de los procedimientos. Recuérdese que fue el propio Estado quien solicitó del tribunal que dejara sin efecto un *injunction* preliminar que le prohibía aplicar la ley. En tal sentido es argüible la posición del recurrido en este caso de que el Estado por *aquiescencia* se allanó a la apreciación del tribunal de que la legislación, de su faz, sin el reglamento, no era autoejecutable. La comparecencia del Estado ante el tribunal de instancia demuestra una intención de corregir esa situación. El tribunal aparentemente entendió innecesario emitir una orden en esa etapa habida cuenta de la posición asumida por el Estado y la anuencia del demandante. Ello unido al fundamento de derecho esbozado en la sentencia de que la ley constituía un mandato insuficiente por adolecer de vaguedad atribuible a la falta de un reglamento, creó una expectativa de adhesión al cumplimiento de lo expresado por las partes.

A pesar de lo anterior, el Estado llevó a cabo gestiones para poner en vigor, *sin ninguna alteración,* la misma ley que pocos meses antes había sido suspendida por "insuficiencia" o vaguedad atribuible a la falta de reglamentación. Si bien no se discute su derecho a variar de posición conforme a una política pública cambiante, no puede sostenerse que su conducta procesal y manifestaciones anteriores no tengan consecuencias jurídicas y el tribunal de instancia no las pueda tomar en consideración en relación con la interpretación que haga de su propia sentencia.

Bajo estas circunstancias particulares, nada impedía al tribunal de instancia entender en la solicitud del demandante al amparo de las Reglas 56.3 y 56.5 de las Reglas de Procedimiento Civil de 1979 (32 Ap. III, Rs. 56.3 y 56.5) para interpretar el ámbito de su dictamen y "hacer efectiva la senten-

cia" en los términos anteriormente descritos. (3) La expectativa creada al recurrido mediante la conducta del Estado, así como la declaración de derechos contenida en la sentencia original, constituyen dos factores adicionales que el tribunal podía tomar en consideración al ejercitar su jurisdicción sobre la controversia y las partes. (4) Al amparo de la Regla 56.3 el tribunal reafirmó los fundamentos de su sentencia y le ordenó a los demandantes que se abstuvieran de poner en vigor la Ley de Cierre y el Reglamento de Competencia Justa Núm. VII hasta tanto no se promulgase y convirtiese en efectivo el reglamento a ser aprobado por el Departamento de Comercio. Para esta parte de su orden no exigió fianza. De otra parte, bajo la Regla 56.5 el tribunal dispuso "que en caso de que se prepare el reglamento de ley y en el proceso de la implementación del mismo no provea un término de por lo menos diez (10) días para su vigencia; para que dicho reglamento pudiere obligar al aquí demandante se le tendrá que notificar copia fiel con no menos de diez (10) días de anticipación, conforme requiere la Regla 67.2 y 67.3 de Procedimiento Civil de 1979".

No es hasta el 3 de abril de 1986 que el tribunal emite por primera vez, después de dictada la sentencia, una orden expresa que prohibía al Estado la ejecución de un acto. Esta orden constituyó un *injunction* del tipo prohibitorio permanente. Al ejercer su discreción para emitir esta orden no con-

---

(3) Implícitamente hemos reconocido la facultad de un tribunal para vindicar su dignidad cuando un litigante asume en el curso de un proceso judicial una posición contradictoria con los derechos que podría reclamar, induciéndolo a hacer pronunciamientos y determinaciones que luego pretende atacar o cuestionar. *Municipio* v. *Comisión Servicio Público*, 53 D.P.R. 276, 284–285 (1938).

(4) Compárese con lo resuelto en *A.P.P.R.* v. *Tribunal Superior*, 103 D.P.R. 903, 909 (1975), dijimos: "Un *injunction* no puede sobrevivir la extinción del estado de derecho y circunstancias factuales que dieron lugar a su expedición. El remedio no se perpetúa más allá de su razón genésica. Los tribunales nunca deben ignorar cambios de relieve en la ley o en las circunstancias que sostienen el *injunction* . . . ."

tenida en la sentencia previa, ya fuere a tenor con la Regla 56.5 o la 57, conforme los requisitos mínimos del debido proceso de ley, el tribunal debió escuchar no solamente las alegaciones del demandante, sino también los fundamentos que tenía el Estado para variar la política pública y oponerse a la orden solicitada, además de cualesquiera otras circunstancias concurrentes al caso. Véase *Torres Ponce* v. *Jiménez*, 113 D.P.R. 58, 60–61 (1982).

En *P.R. Telephone Co.* v. *Tribunal Superior*, 103 D.P.R. 200, 202 (1975), expresamos que al determinar si concede o no un remedio provisional de esta naturaleza el tribunal debe considerar los siguientes criterios: "la naturaleza de los daños que pueden ocasionárseles a las partes de concederse o denegarse el *injunction;* su irreparabilidad o la existencia de un remedio adecuado en ley; la probabilidad de que la parte promovente prevalezca eventualmente al resolverse el litigio en su fondo; la probabilidad de que la causa se torne en académica de no concederse el *injunction* y, sobre todo, el posible impacto sobre el interés público del remedio que se solicita." El *injunction* permanente también requiere la celebración de vista y la consideración de la mayor parte de estos criterios. *Cf. A.P.P.R.* v. *Tribunal Superior*, 103 D.P.R. 903, 906 (1975) ; véase D. Rivé Rivera, *El Injunction en Puerto Rico*, 53 Rev. Jur. U.P.R. 341, 354 y ss. (1984).

En el presente caso se trata de una orden dictada contra el Estado cuyo efecto es paralizar de forma permanente la implantación de una ley. Dicha orden iba dirigida a conjurar los efectos de un cambio dramático en las circunstancias y relaciones entre las partes, creado por el cambio en la posición del Estado respecto a la política pública de implantación de la Ley de Cierre. (5) Esta situación justificaba con mayor razón

---

(5) La actuación del tribunal de instancia se enmarca en la preservación del *status quo*, confirmado por su sentencia, las posiciones de las partes y el estado de derecho que prevalecía antes de dictarse la sentencia de 25 de septiembre de 1985.

la celebración de una vista por el tribunal para atender los planteamientos de las partes, en especial el posible impacto público y a terceras personas del remedio solicitado.

Por los fundamentos antes expuestos y tomando en consideración que el 17 de abril de 1986 se radicó en el Departamento de Estado el reglamento titulado *Reglamento para identificar establecimientos comerciales exentos de la Ley de Cierre en Zonas de Interés Turístico*, aprobado por el Departamento de Comercio al amparo de la Ley Núm. 100, *supra*, ([6]) debe expedirse el auto de *certiorari*, dejarse sin efecto la orden recurrida, devolverse el caso con instrucciones de que se considere la solicitud de la parte demandante-recurrida Pueblo como una bajo la Regla 56.5 o bajo la Regla 57, y se celebre vista inmediatamente, se permitan las enmiendas a las alegaciones que se estime sean pertinentes ([7]) y necesarias y se resuelva prontamente esta importante controversia. ([8])

—O—

Opinión concurrente y disidente emitida por el Juez Asociado Señor Hernández Denton.

I

Independientemente de la posición errática y poco aleccionadora del Estado en cuanto al cumplimiento estricto de la

---

([6]) El mismo 17 de abril de 1986 el Gobernador de Puerto Rico emitió una orden ejecutiva en el ejercicio de la facultad que le confiere la Sec. 11 de la Ley Núm. 112 de 30 de junio de 1957 (3 L.P.R.A. sec. 1051) donde dispone que dicho Reglamento comenzaría a regir inmediatamente después de su aprobación.

([7]) Sobre la posibilidad de enmendar las alegaciones en esta etapa, véase *Pérez Cruz* v. *Hosp. La Concepción*, 115 D.P.R. 721, 737 esc. 4 (1984).

([8]) El tribunal de instancia dentro de su discreción podrá considerar la deseabilidad de consolidar este caso con otros que planteen idénticas cuestiones de derecho y reconocer el derecho de intervención a aquellas partes interesadas o perjudicadas por esta controversia. *Chase Manhattan Bank* v. *Nesglo, Inc.*, 111 D.P.R. 767, 769–772 (1981); *R. Mix Concrete* v. *R. Arellano & Co.*, 110 D.P.R. 869, 872–873 (1981).

Ley de Cierre, una vez superadas sus críticas[1] a los dictámenes de los tribunales que han intervenido en este caso, nos corresponde el deber ineludible de resolverlo sobre las bases de una rigurosa y ponderada aplicación del derecho. Con este marco conceptual es que debemos analizar la controversia ante nosotros.

La sentencia del Tribunal allana el camino para que se reabra un caso en el que se archivó una controversia que no era justiciable por ser prematura, académica y cuya sentencia advino final y firme. Aunque coincidimos con la sentencia que deja sin efecto la orden recurrida, no estamos de acuerdo en devolver el caso al Tribunal Superior para que considere un pleito que concluyó hace más de seis meses. Nos explicamos.

## II

Este litigio tiene su origen en el 1980 cuando varios establecimientos comerciales, entre ellos Pueblo International y Grand Union, acudieron a los tribunales para que se declarara inconstitucional la Ley de Cierre vigente en aquel momento. En diciembre de 1980, en el caso de *Grand Union* v. *Giménez Muñoz*, Civil Núm. P.E. 80-684 (907), el Tribunal Superior, Sala de San Juan, decretó inconstitucional la Ley de Cierre y dictó un *injunction* permanente. En virtud de esa sentencia, y a petición de Pueblo International, otra sala del Tribunal Superior accedió el 3 de febrero de 1981 a emitir un

---

[1] Tan reciente como el 15 de enero de 1986 señalamos que "el respeto hacia los tribunales, y su exaltación como uno de los postulados deontológicos más hermosos, no implica el establecimiento de una censura previa. Tampoco el que no reconozcamos la más amplia y dilatada libertad de defensa al abogado en el ejercicio de su profesión.

"Incuestionablemente, la crítica judicial sana y oportuna es un instrumento necesario y efectivo para mantener a los jueces alertas y atentos al estricto cumplimiento de sus funciones. Tal crítica es un interés legítimo constitucional que debemos proteger. Es un vehículo apropiado para producir cambios favorables en el sistema de administración de justicia." *In re Cardona Álvarez*, 116 D.P.R. 895, 904 (1986).

*injunction* preliminar contra el Estado en el caso de autos (²) porque entendía que había "una alta probabilidad" de que la empresa Pueblo International eventualmente *prevaleciera* en los méritos. Este Tribunal acogió la apelación en el caso O-81-32 de Grand Union y permitió la intervención de Pueblo International como *amicus curiae*. (³) El 30 de junio de 1982, revocamos la sentencia del Tribunal Superior, Sala de San Juan, y sostuvimos la constitucionalidad de la Ley de Cierre.

Luego de esa sentencia y de unas enmiendas a la Ley de Cierre aprobadas por la Asamblea Legislativa en el 1983, el tribunal de instancia archivó en septiembre de 1985 el pleito que ahora nos ocupa. Al así hacerlo expuso inequívocamente sus fundamentos. A su entender el asunto presentado ante él no era justiciable:

> No se trata ésta de legislación "madura" que cierta y verdaderamente presente "una controversia real entre las partes de naturaleza justiciable, propia para un pronunciamiento judicial", *Asociación* v. *Secretario*, 87 DPR 711 (712–713), y por lo tanto, no creemos tener ante nos una causa susceptible de un legítimo planteamiento de inconstitucionalidad por imprecisión (*vagueness*), *In re Guzmán*, 113 DPR 122, ni causa susceptible de la interpretación de una ley, *Vives* v. *Tribunal*, 101 DPR 139. Consecuentemente, luego del 4 de junio de 1983 esta causa se convirtió en académica no teniendo los tribunales del país jurisdicción para emitir opiniones consultivas. *Asociación* v. *Secretario*, supra (714); *City of Mesquite* v. *Aladdin's*, 102 S. Ct. 1070.

---

(²)*Pueblo International* v. *Giménez Muñoz*, Civil Núm. 80-654 (908).

(³)Pueblo International solicitó intervención como *amicus curiae* a este Tribunal en el caso de *Grand Union* v. *Giménez Muñoz*, O-81-32, porque tenía "un especial interés en el asunto objeto de la controversia en el pleito de epígrafe, puesto que la forma en que se adjudique finalmente la cuestión aquí planteada, y la validez del Reglamento sobre Competencia Justa Núm. VII, le afectará directamente". Pueblo International sometió extensos alegatos y hasta tres mociones de reconsideración. Aunque participó intensamente en el caso donde decretamos la constitucionalidad de la ley, una vez se dictó la sentencia continuó con el otro caso que tenía en instancia.

Nuestra decisión en 1982 que refrenda la constitucionalidad de la Ley de Cierre, las enmiendas a dicho estatuto aprobadas por la Asamblea Legislativa en el 1983, y la decisión de la Rama Ejecutiva de no ponerla en vigor hasta que se promulgara el reglamento exigido por la nueva legislación, correctamente llevaron al tribunal a archivar el caso.

Una vez el tribunal a quo concluyó que la controversia no era justiciable, precisamente porque no estaba madura, dispuso finalmente del caso sin entrar en sus méritos. Una sentencia de archivo sin perjuicio por falta de jurisdicción no tiene el efecto de una adjudicación en los méritos. *Payne* v. *Panamá Canal Co.*, 607 F.2d 155, 158 (5to Cir. 1979); *De Volld* v. *Bailar*, 568 F.2d 1162, 1165–1166 (5to Cir. 1978). Por su naturaleza, excluye la aplicabilidad de la doctrina de cosa juzgada. *Fresh-O-Baking Co.* v. *Molinos de P.R.*, 103 D.P.R. 509, 514 (1975); *Rivera* v. *Insurance Co. of P.R.*, 103 D.P.R. 91, 94 (1974); *García* v. *Gobierno de la Capital*, 72 D.P.R. 138, 150–151 (1951). *Cf. Developments in the Law— Res Judicata*, 65 Harv. L. Rev. 818, 836 n. 121 (1952).

Un archivo sin perjuicio "deja la situación procesal en el mismo lugar que si la demanda nunca se hubiese presentado", 8B *Moore's Federal Practice* Sec. 41.05 (2), pág. 41-47 (1985). Por ser una sentencia final, el demandante puede solicitar su revisión cuando el tribunal, como en este caso, archivó el pleito a petición del demandado. *Drake* v. *Southwestern Bell Tel. Co.*, 553 F.2d 1185, 1186 (8vo Cir. 1977); 9 *Wright & Miller, Federal Practice and Procedure: Civil* Sec. 2376, pág. 251 (1971). *Cf. City of Mesquite* v. *Aladdin's Castle, Inc.*, 455 U.S. 283, 288–289 (1982). Pero en el caso de autos el demandante no se opuso al archivo ni cuestionó la decisión. Tampoco acudió ante este foro.

Archivado el caso en 1985, el tribunal de instancia carecía de jurisdicción para considerar la orden remedial solicitada por Pueblo International. Por eso declaró sin lugar la demanda enmendada radicada por el demandante-recurrido, y

adujo que "la sentencia del 25 de septiembre de 1985 dispuso [de] la totalidad del caso y no tenemos jurisdicción". (4) Sin embargo, sin una adecuada explicación para superar la falta de jurisdicción, emitió erróneamente una orden en aseguramiento de sentencia. En estricto derecho no se puede dictar una orden para asegurar una sentencia que archivó sin perjuicio la demanda. Contraria hubiese sido la situación si en vez de desestimar la segunda demanda enmendada, el tribunal la hubiese considerado como una nueva demanda y petición de entredicho provisional e *injunction* preliminar. Seguido el trámite correspondiente, al amparo de su poder, de las Reglas de Procedimiento Civil y de nuestra jurisprudencia, el tribunal recurrido muy bien hubiera podido tomar las medidas que procedieran.

Las circunstancias ampliamente descritas en las opiniones concurrentes dieron lugar a la decisión del ilustrado magistrado. Sin embargo, resulta diáfanamente claro, bajo cualquier enfoque, que la sentencia de archivo sin perjuicio no es ejecutable precisamente porque no dispuso de la controversia debido a que la misma era inmadura, y por ende no adjudicó sus méritos.

Esa sentencia de archivo no contiene dictamen alguno que pueda ser asegurado bajo la Regla 56.5 o la Regla 57 de Procedimiento Civil. No importa la inventiva judicial, ese archivo dispuso del caso. No procede jurídicamente que en revisión permitamos la reapertura de un caso cuyas alegaciones están basadas en una ley ampliamente enmendada luego de haberse presentado la demanda. Más aún, no existe ningún escrito de Pueblo International en el tribunal de instancia donde impugne la validez de la Ley de Cierre, según enmendada en el 1983 y su disposición que permita la apertura de

---

(4) Pueblo International no ha recurrido de esta determinación del tribunal de instancia y por lo tanto el único incidente que está ante nuestra consideración es la orden en aseguramiento de la sentencia dictada.

ciertos establecimientos comerciales en las zonas turísticas del país, según definidas por reglamento. (⁵)

## III

Es una contradicción lógica afirmar que una sentencia que ordena el archivo de una demanda por no ser justiciable contenga "declaraciones de derechos" ejecutables. Los pronunciamientos que en la sentencia de septiembre de 1985 hizo el tribunal de instancia sobre las enmiendas a la Ley de Cierre fueron precisamente la base para declarar en aquel entonces que el caso no era justiciable. No podía el tribunal a quo en aquel momento resolver nada referente a la nueva ley porque nadie se lo había solicitado. (⁶) Luego de enmendada la Ley de Cierre en 1983, el demandante en este caso, Pueblo International, *nunca* acudió diligentemente ante el tribunal de instancia para enmendar la demanda y atemperar sus alegaciones. Nunca se recibió prueba sobre la validez de la nueva ley, por lo que no podemos considerar la posibilidad de que la demanda fue implícitamente enmendada. (⁷)

Tampoco es posible justificar la actuación del tribunal recurrido al amparo del principio que enuncia que el nombre o título que se le asigne a un escrito no limita el tipo de remedio que se puede y debe conceder. *A.T.P.R.* v. *Padín Santiago,*

---

(⁵) Recuérdese que la segunda demanda enmendada fue declarada sin lugar por falta de jurisdicción y Pueblo International no ha recurrido ante nos. Véase el escolio 4, *ante.*

(⁶) La sentencia que decreta el *injunction* preliminar en el presente caso, 80-6454 (908), fue emitida por el Hon. Salvador Acevedo el 3 de febrero de 1981 luego de celebrar vista. Después del retiro del Juez Acevedo, el caso fue asignado a la sala del Juez Hon. Guillermo Arbona. Luego de dictado el *injunction* preliminar en 1981, no se celebró vista en los méritos y por lo tanto, el tribunal estaba impedido de adjudicar plenamente la controversia.

(⁷) Resulta una abstracción jurídica y contraria a nuestro esquema procesal proponer que una moción *del demandado* donde se solicita el archivo de una demanda porque ésta se basa en una ley que sufrió cambios sustanciales con posterioridad a la iniciación del plcito, tenga el efecto de enmendar la demanda para atemperarla a la nueva realidad jurídica.

104 D.P.R. 426, 428–429 (1975); *Soc. de Gananciales* v. *Soc. de Gananciales*, 104 D.P.R. 50, 52–53 (1975); *Lebrón Velázquez* v. *Romero Barceló*, 101 D.P.R. 915, 921 (1974); *Cruz* v. *Director de la Lotería*, 94 D.P.R. 260, 263–264 (1967). Esta jurisprudencia, que emana de los principios que informan nuestro ordenamiento procesal, y en especial de la Regla 70 de las de Procedimiento Civil, únicamente establece que "[c]ualquier defecto en la denominación del. *pleito* o en la *súplica* del remedio, no será óbice para que el tribunal conceda el remedio que proceda de acuerdo con las *alegaciones* y la *prueba*". (Énfasis suplido.) *A.T.P.R.* v. *Padín Santiago*, supra. Tal principio no nos permite interpretar *a posteriori* que una sentencia de desestimación final y firme que archivó la acción, adjudicó parte de la controversia presentada.

Por otro lado, aun si se supone que el caso fue archivado sin perjuicio debido a la ausencia de un reglamento para poner en vigor la excepción de zona turística a la Ley de Cierre, la sentencia que decreta la desestimación del pleito no contenía orden alguna en su parte dispositiva que impidiera al Estado poner en vigor la ley. Más aún, el decreto de desestimación sin perjuicio es hoy final y firme. Nadie la cuestionó dentro de los treinta (30) días reglamentarios. Regla 53.1 (b) de Procedimiento Civil. Su validez o corrección no puede ser cuestionada ahora en un pleito inexistente. La realidad es que si bien la *controversia* no fue adjudicada en septiembre, el *caso* sí llegó a su fin entonces. Expirado el término de seis (6) meses que la Regla 49.2 provee para que una parte afectada pueda presentar una moción en la que solicite ser relevada de una sentencia, la controversia acerca de la validez de la Ley de Cierre sólo puede ser planteada en un nuevo litigio. Ese cauce procesal no es oneroso para Pueblo International, pues el caso desestimado en septiembre de 1985 se encontraba en una etapa muy temprana. Todavía no se había celebrado el juicio.

Nuestra posición no quiere decir que las actuaciones del Estado, que tan detalladamente han sido relatadas en las opiniones concurrentes, no puedan tener consecuencias jurídicas de clase alguna. Si la demandante-recurrida reclama por los daños y perjuicios que le pueda haber causado el Estado por haber alegadamente abusado de los procesos judiciales, y prueba su causa de acción, podría ser indemnizada. ([8]) Véanse: *Soriano Tavárez v. Rivera Anaya*, 108 D.P.R. 663, 670–674 (1979); D. Fernández y C. Toro, *El lucro cesante en materia de responsabilidad civil extracontractual: la confusión de la Torre de Babel*, 52 Rev. Jur. U.P.R. 31, 42–48 (1983). Correspondería a Pueblo International probar que el Estado obró de mala fe al obtener la desestimación del caso mediante una promesa que luego supuestamente incumplió. ([9])

---

([8]) Si la conducta de cualquier litigante produce un debilitamiento de la autoridad del tribunal, o si se le hacen falsas representaciones, las reglas procesales proveen también para que ese litigante sea sancionado. Regla 9 de las de Procedimiento Civil. Véase *De León v. Sria. de Instrucción*, 116 D.P.R. 687 (1985).

([9]) "La buena fe se presume. Quien reclama la mala fe debe probarla." *Cervecería Corona v. Commonwealth Ins. Co.*, 115 D.P.R. 345, 351 (1984).

Es necesario precisar que cuando en ocasiones previas nos hemos enfrentado a la conducta de un litigante que obra de mala fe o abusa de los procedimientos, hemos recurrido a los mecanismos que nuestro ordenamiento provee para subsanar el perjuicio causado. Así, en *Velilla v. Pueblo Supermarkets, Inc.*, 111 D.P.R. 585 (1981), decidimos que cuando una parte hace falsas representaciones para evitar ser demandada dentro del término prescriptivo, se entiende que ha renunciado a la defensa de prescripción que de otro modo hubiera tenido disponible. De esa opinión no podemos concluir que la mala fe empleada entonces por la demandada diera base para que se hiciera caso omiso de las reglas procesales aplicables. Sencillamente, la demandada había renunciado a una defensa afirmativa.

Por otro lado, en *Berríos v. U.P.R.*, 116 D.P.R. 88 (1985), señalamos que cuando cualquier demandado —inclusive el Estado— engaña al demandante al negar su responsabilidad, procede de todos modos que éste pague por los daños y perjuicios causados. Como explicamos recientemente en *Vega v. Adm. Servs. Médicos*, 117 D.P.R. — (1986), el problema es uno de responsabilidad por autoridad aparente. Si bien en *Berríos v. U.P.R.*, supra, rechazamos el abuso de los procedimientos, nunca apoyamos que se hiciera caso omiso de los mismos. Por el contrario, hicimos claro que el procedimiento dispuesto en las Reglas 6.2 y 6.4 de Procedimiento Civil para negar alegaciones impide contestaciones que no sean cónsonas con la buena fe,

## IV

En síntesis, no procede la reapertura tardía de un caso desestimado por sentencia final y firme para que se litiguen asuntos que no están planteados en éste. Semejante proceder constituye una erosión contraproducente de los derechos de una parte —el Estado— y del propósito del ordenamiento, a saber, que los casos concluyan, y su finalidad sea respetada, aunque los méritos de la controversia no hayan sido resueltos. No se puede someter a una parte a la jurisdicción eterna de un tribunal por el mero hecho de que una vez fue demandada. Si en lugar del Estado, el demandado en este caso fuera una persona privada, la reapertura tardía del caso por medio de una simple moción constituiría una violación del debido proceso de ley, en su modalidad de la notificación *personal* al demandado. *Hach Co.* v. *Pure Water Systems, Inc.*, 114 D.P.R. 58, 61 (1983) ; *Mundo* v. *Fúster*, 87 D.P.R. 363, 365–375 (1963).

Por los fundamentos expuestos, y en ausencia de un pleito que impugne la constitucionalidad de la actual Ley de Cierre, según enmendada, concurrimos con el Tribunal en cuanto a dejar sin efecto la orden remedial de 3 de abril de 1986. Sin embargo, disentimos del mandato que remite el caso al foro de instancia para que éste determine si la sentencia de septiembre de 1985 constituye una adjudicación en los méritos. (10) Ello es innecesario. El caso de *Pueblo International* v.

---

"precepto general que abarca toda actividad jurídica". Véase además, *H.U.C.E. de Ame.* v. *V. & E. Eng. Const.*, 115 D.P.R. 711 (1984).

Por último, señalamos que no es aplicable a este caso la doctrina de "error inducido" descrita en *Municipio* v. *Comisión Servicio Público*, 53 D.P.R. 276, 284–285 (1938). Ésta se invoca cuando es la propia parte afectada la que indujo a error al tribunal. En el caso de autos, el Estado nunca solicitó que se asegurara o ejecutara erróneamente la sentencia de archivo sin perjuicio.

(10) Además, nos preocupan las teorías de las opiniones concurrentes que fundamentan la devolución del caso a instancia aplicando indiscriminadamente a la Regla 56.5 de Procedimiento Civil los criterios para la expedición de *injunctions* bajo la Regla 57, según expuestos en *P.R. Telephone Co.* v. *Tribunal Superior*, 103 D.P.R. 200, 202 (1975). Aunque no es nuestra

*Héctor Rivera Cruz*, Civil Núm. 80-6454 (908), se archivó en septiembre de 1985. En ese momento el pleito terminó.

—O—

Voto concurrente y disidente emitido por el Juez Presidente Señor Pons Núñez con el cual concurre en parte el Juez Asociado Señor Alonso Alonso.

Además de las cuestiones de técnica procesal jurídica que plantea este caso, el mismo trae a foco la visión que tenemos de algunas de las funciones de la Rama Judicial especialmente en relación con cuestiones complejas, por su naturaleza intrínseca y por su carga de emociones. Toda vez que hemos de referirnos a esa visión que es básicamente valorativa deseamos exponerla sencillamente, sin citas de precedentes que abulten lo dicho o propicien interpretaciones afincadas en ellos y no en la visión propia. La cuestión es fundamental.

Conviene para ello ver los hechos que en fin entendemos relevantes.

Como bien se ha señalado este es un caso donde el ilustrado tribunal de instancia, a petición de la recurrida Pueblo International, Inc. (Pueblo), le ordenó preliminarmente al Estado, el 3 de febrero de 1981, que desistiera de poner en vigor la llamada Ley de Cierre. (¹) Luego de fallar en lograr revocar el estado de derecho creado por esa orden, el Estado la acató.

---

intención adelantar criterio alguno acerca de este punto de derecho, nos intriga que una solicitud posterior a una sentencia se evalúe a base de "la probabilidad de que la parte promovente prevalezca eventualmente al resolverse el litigio en su fondo [y de] la probabilidad de que la causa se torne en académica de no concederse" el remedio solicitado. No alcanzamos a visualizar cómo puede ser académico un caso ya resuelto ni cómo puede hablarse de la probabilidad de prevalecer de una parte que precisamente ya prevaleció. El asunto es uno que merece una consideración más detenida. Véase D. Rivé Rivera, *El Injunction en Puerto Rico*, 53 Rev. Jur. U.P.R. 341, 374–378 (1984). Preferimos esperar el caso adecuado para ello.

(¹) Ley Núm. 306 de 15 de mayo de 1938, según enmendada, 33 L.P.R.A. secs. 2201–2205.

En varias ocasiones el Estado reiteró que toda vez que la Ley de Cierre, según enmendada en 1983, ordenaba la adopción de un Reglamento y al éste no haber sido adoptado dicha ley no tenía vigencia jurídica pues no era implantable. El 6 de septiembre de 1985, teniendo pendiente una conferencia en instancia para el 9 de septiembre y un señalamiento para juicio en octubre, el Estado mediante moción repitió ese argumento, entre otros, y le indicó al tribunal que en razón de ello el estatuto no estaba siendo implantado por lo que resultaba innecesaria la orden de *injunction* preliminar de 3 de febrero de 1981.

Como resultado de esa moción y de la conferencia el tribunal de instancia emitió sentencia el 25 de septiembre de 1985 donde acogía dichos planteamientos y decretaba el archivo del caso sin perjuicio. Dicha sentencia tuvo el efecto de eliminar el *injunction* preliminar y de evitarle al Estado que tuviese que litigar los días 1ro y 2 de octubre de 1985, con una orden de *injunction* preliminar ya emitida. El 10 de marzo de 1986 el Estado reiteró que la Ley de Cierre no se estaba implantando ya que el Reglamento ordenado no había sido adoptado, aun cuando el 9 de marzo de 1986, diecinueve establecimientos de la recurrida fueron intervenidos por efectivos del Estado quienes interrogaron gerentes, tomaron fotos e hicieron advertencias sobre las operaciones dominicales.

Sorpresivamente el 25 de marzo de 1986 se anunció en la prensa del país y a las 6:30 P.M. se le notificó por escrito a la recurrida, Pueblo, que en lo sucesivo la Ley de Cierre se haría cumplir. Para entonces todavía no se había adoptado el Reglamento aludido. Coincidió que ese 25 de marzo de 1986 era el último día hábil en que la recurrida podía solicitar, a tenor con lo dispuesto en la Regla 49.2 de las de Procedimiento Civil, relevo de los efectos de la sentencia dictada el 25 de septiembre de 1985.

Ante esos hechos la recurrida compareció ante el tribunal de instancia y éste emitió, de acuerdo con las disposiciones de

la Regla 56.5 de las de Procedimiento Civil, su orden de 3 de abril de 1986. Contra esa orden es que recurre el Estado ante este Tribunal.

Acude el Estado ante este Tribunal sin haberse acogido al recurso rápido y eficaz que le provee la propia Regla 56.5 bajo la cual se emitió la orden de 3 de abril de 1986. Es preciso también señalar que acude el Estado ante nosotros habiendo pretendido pautar, de antemano y públicamente, cuándo y cómo decidiríamos el caso y habiéndole conferido al asunto, también públicamente, una urgencia inexplicada que contrasta marcadamente con la parsimonia con que el Estado actuó por años.

No contamos tampoco con una explicación convincente sobre la razón para el cambio súbito de posición ocurrido entre el 10 y el 25 de marzo, ni con una explicación convincente del Estado para no acogerse a lo dispuesto en la Regla 56.5. No existe justificación real alguna que se haya ofrecido para invocar, como se hizo, el auxilio de nuestra jurisdicción.

Esta situación que he discutido en apretada síntesis es la que trae a foco nuestra visión de las funciones de la Rama Judicial.

La Rama Judicial sirve de instrumento para que en la sociedad que nos hemos ordenado se puedan dirimir y resolver, conforme a las normas de derecho sustantivo que hemos adoptado, las controversias que surgen entre las personas, así como las controversias que surgen entre las personas y el Estado.

Para resolver a tenor con el derecho sustantivo imperante, o en ausencia de éste de acuerdo a equidad, la Rama Judicial cuenta con reglas procesales que encauzan el proceder de los que a ella acuden. A nuestro juicio la más importante de esas reglas es aquella que impone el juego limpio, la conducta franca y honesta, la buena fe y la lealtad al buen funcionamiento del sistema. Esa regla es marco de referencia, razón de ser y objetivo de las otras reglas procesales.

Cuando puede estar en entredicho la regla básica antes expuesta entendemos que debemos vindicarla.

La función de esta Rama Judicial, delicada de por sí, resulta serlo aún más cuando uno de los litigantes es el Estado. El Estado, como litigante, tiene una responsabilidad aún mayor que cualquier persona pues su función es, además de cualquiera otra, *ejemplarizante*. El Estado debe ser tan celoso y escrupuloso como el que más en que se cumplan los más altos fines de juego limpio y buena fe en los litigios que se suscitan ante los tribunales del país. Para ello el ejemplo propio es indispensable.

Compete también a la Rama Judicial que las controversias queden en justa perspectiva y propiciar que las partes actúen con la sensatez necesaria para que puedan ellas mismas ayudar a resolver sus controversias. Debe dar por ello la Rama Judicial lugar a la reflexión, a la meditación seria que evite o controle la acción precipitada sin menoscabo de una justicia rápida.

En este caso al Tribunal actuar con mesura, sin dejarse llevar por la estridencia pública, ya ha logrado en parte que se controle la precipitación. El Estado adoptó el 17 de abril de 1986, el reglamento[2] *que le había sido ordenado desde el 4 de junio de 1983* y que no tenía cuando pretendió implantar la Ley de Cierre el 25 de marzo pasado. La adopción de ese Reglamento cambia ahora totalmente las circunstancias que dieron lugar a la expedición de la orden de 3 de abril de 1986 y elimina toda razón de ser de la misma.

Entendemos que ante este cuadro de hechos procede que las partes diluciden su controversia con mesura y ponderación ante el tribunal de instancia, pues: (a) el Estado no ha justificado adecuadamente la necesidad de comparecer ante este Tribunal ni la procedencia de invocar el auxilio de nuestra ju-

---

[2] Reglamento Núm. 3306 de 17 de abril de 1986, "Para Identificar Establecimientos Comerciales Exentos de la Ley de Cierre en Zonas de Interés Turístico".

risdicción; (b) el Estado no ha justificado adecuadamente por qué no compareció ante el tribunal de instancia para acogerse al recurso rápido y eficaz que le provee la Regla 56.5; (c) es al tribunal de instancia al que corresponde, en primer lugar, juzgar si la conducta del Estado está acorde con la norma procesal de juego limpio y buena fe.

Toda otra consideración de técnica procesal jurídica debe ceder ante una situación en que se cuestiona el cumplimiento con la norma máxima. El nuevo cambio del Estado al adoptar el Reglamento constela una nueva situación ya prevista por el tribunal de instancia, que elimina toda razón de ser para la orden de 3 de abril de 1986, con lo cual debe éste entender en primera instancia. Esta no es una situación de urgencia, no es una situación en que este Tribunal deba resolver una cuestión constitucional trascendental ya que no se le ha planteado y tampoco existe un récord que le permita hacerlo. Ni los recursos del Estado, ni los tribunales deben utilizarse y movilizarse innecesariamente. Debe permitírsele al tribunal de instancia ser guardián de su propia dignidad y no abrogarnos la facultad de actuar por él cuando no existe necesidad apremiante.

Por ello disiento en cuanto la sentencia deja sin efecto la orden del tribunal de instancia de 3 de abril de 1986, concurro con los otros pronunciamientos contenidos en la referida sentencia y concurro también con la opinión emitida por el Juez Asociado Señor Ortiz en todo aquello que no es incompatible con lo aquí expresado.